JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

JAMES C. MANN (CABN 221603)
Assistant United States Attorney

    1301 Clay Street, Suite 340-S
    Oakland, California 94612
    Telephone:  (510) 637-3705
    Facsimile:  (510) 637-3724
    E-Mail:     James.C.Mann@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>       Plaintiff, )<br>    v. )<br>MASHAVU T. TURNER, )<br>       Defendant. )<br>_____ ) | No. CR-08-0044 DLJ<br><br>**GOVERNMENT'S APPEAL OF PRE-TRIAL RELEASE ORDER FOR DEFENDANT MASHAVU T. TURNER**<br><br>Date:     March 7, 2008<br>Time:     11:00 a.m.<br>Court:    Hon. D. Lowell Jensen |

## INTRODUCTION

    The government files this appeal of Magistrate Judge Wayne D. Brazil's order granting pre-trial release to Defendant Mashavu T. Turner.  Defendant is charged in an indictment with four counts of possession with intent to distribute narcotics, namely, 240 grams of cocaine base, 76 grams of actual methamphetamine, 85 grams of cocaine powder, and 77 grams of marijuana.

    As a matter of law, Defendant is presumed to be both a danger to the community and a flight risk, and has failed to present facts which rebut those presumptions.  Defendant must therefore be detained pending trial.  Even if Defendant can rebut the presumptions of danger and flight, the government has demonstrated by clear and convincing evidence that Defendant is a

danger to the community and by a preponderance of the evidence that Defendant is a flight risk. As explained below, and in the government's opposition previously filed under seal, Defendant should be detained pending trial because:

- The variety and amounts of narcotics at issue demonstrate that Defendant is not a street-level dealer who sells narcotics to support an addiction, but rather, a high-level, sophisticated supplier of narcotics;

- Defendant's use of home surveillance equipment and possession of body armor indicate Defendant's recognition of the violence and danger associated with drug-trafficking;

- Defendant faces a mandatory minimum sentence of twenty years imprisonment if convicted following the filing of an information alleging his prior felony narcotics conviction;

- a $250,000 unsecured bond is not sufficient to secure Defendant's appearance and adequately safeguard the community, especially given that one of Defendant's three sureties failed to appear to sign the bond; and

- Defendant has no record of steady employment or a stable residence; Defendant supported himself by illegally selling narcotics.

Consequently, not only does the law presume that Defendant is both a danger to the community and a flight risk, but the facts and circumstances of Defendant's criminal livelihood also show him to be a danger to the community and a flight risk.  Defendant must therefore be detained pending trial.

**FACTUAL BACKGROUND**

A.    **Search Warrant Executed On Defendant's Apartment.**

The indictment in this case resulted from a search warrant executed on Defendant's apartment following an investigation of Defendant's narcotics-trafficking activity.  On August 30, 2007, Detective Nicholas Gartner and other officers from the Concord Police Department conducted surveillance on Defendant.  (See Exhibit A at MT-076, Affidavit for Search Warrant dated September 19, 2007.)  While under surveillance, Defendant conducted various counter-

1    surveillance driving tactics, including: (1) repeating driving routes; (2) driving through

2    commercial parking lots without entering the stores or using the services therein; and (3)

3    switching vehicles.  (Id.)  On the same date, Defendant consented to the search of his car and

4    person after being stopped for a traffic violation.  (Id.)  Defendant had $3,000 cash on his person,

5    which he claimed resulted from "personal business."  (Id.)

6            On September 19, 2007, Honorable Judge Arnason of the Contra Costa Superior Court

7    signed a search warrant for Defendant's apartment.  (Exhibit A.)  The following day, officers

8    from the Concord Police Department and agents from the Drug Enforcement Administration

9    discovered the following items while executing the search warrant:  (1) approximately 240 grams

10   of a mixture and substance containing a detectable amount of cocaine base; (2) approximately

11   189 grams of a mixture and substance containing a detectable amount of methamphetamine (74.8

12   grams of actual methamphetamine); (3) approximately 36 grams of a mixture and substance

13   containing a detectable amount of methamphetamine in pill form (1.3 grams of actual

14   methamphetamine); (4) approximately 85 grams of a mixture and substance containing a

15   detectable amount of cocaine hydrochloride; (5) approximately 77 grams of marijuana; (6)

16   packaging material and two scales; (7) body armor; (8) surveillance equipment; and (9) a large

17   box of commercial fireworks.  (See Exhibit B, Concord Police Department Offense Report dated

18   September 20, 2007; Exhibit C, photos of narcotics recovered from Defendant's apartment;

19   Exhibit D, photos of one scale and packaging material recovered from Defendant's apartment;

20   Exhibit E, photos of explosive material harvested from fireworks recovered from Defendant's

21   apartment.)  Following the search, the bomb squad took custody of the fireworks because of the

22   amount of explosive material contained therein.  (Exhibit B at MT-027.)

23        **B.       Detention Hearing And Pre-Trial Release Order To Halfway House.**

24           On February 28, 2008, Defendant appeared for a detention hearing before the Honorable

25   Wayne D. Brazil.  The government moved for detention based on the fact that Defendant is a

26   danger to the community and a flight risk.  Judge Brazil ordered Defendant released to a halfway

27   house following the posting of an unsecured $250,000 bond signed by Defendant's mother,

28

girlfriend, and uncle.  (Minute Order dated February 28, 2008.)  Defendant's uncle, however,

never appeared in court to sign the bond.  (Minute Order dated February 29, 2008.)

## ARGUMENT

### A.        Standard Of Review Is De Novo.

        "[A] district court's review of a magistrate's detention order is to be conducted without

deference to the magistrate's factual findings."  United States v. Koenig, 912 F.2d 1190, 1192

(9th Cir. 1990).

### B.        Defendant Is Presumed A Danger And A Flight Risk As A Matter Of Law.

        The Bail Reform Act of 1984 ("the Act") permits pretrial detention of a defendant

without bail where "no condition or combination of conditions will reasonably assure the

appearance of the person as required and the safety of any other person and the community."  18

U.S.C. § 3142(e).  Detention is appropriate where a defendant is either a danger to the

community or a flight risk; it is not necessary to prove both.  United States v. Motamedi, 767

F.2d 1403, 1406 (9th Cir. 1985).  A finding that a defendant is a danger to the community must

be supported by clear and convincing evidence.  18 U.S.C. § 3142(f).  A finding that a defendant

is a flight risk need only be supported by a preponderance of the evidence.  Motamedi, 767 F.2d

at 1406.

        In cases involving narcotics offenses, the Act established a rebuttable presumption that a

defendant is both a flight risk and a danger to the community.  18 U.S.C. § 3142(e); United

States v. Cox, 635 F. Supp. 1047, 1054 (D. Kan. 1986) (citing H.R. Rep. at 20, U.S.C.C.A.N. at

3203 (Congress also noted that persons charged with major drug felonies are often in the

business of importing or distributing dangerous drugs, and thus "pose a significant risk of pretrial

recidivism.")).  That presumption exists if there is "probable cause" to believe that the defendant

committed a narcotics offense for which a maximum term of imprisonment of ten years or more

is prescribed.  18 U.S.C. § 3142(e).  A grand jury indictment, as returned in this case, establishes

"probable cause" under 18 U.S.C. § 3142(e) and gives rise to the Act's presumptions.  United

States v. Vargas, 804 F.2d 157,163 (lst Cir. 1986); United States v. Suppa, 799 F.2d 115, 119 (3d

Cir. 1986); United States v. Contreras, 776 F.2d 51, 55 (2d Cir. 1985).  Once the presumption is

1    triggered, the defendant has the burden of producing or proffering evidence to rebut the

2    presumption.  United States v. Hare, 873 F.2d 796, 798 (5th Cir. 1989); United States v. King,

3    849 F.2d 485, 488 (11th Cir. 1988).

4        If the defendant proffers evidence to rebut the presumption, the Ninth Circuit has

5    identified several relevant statutory factors in determining whether pretrial detention is

6    appropriate: (1) the nature and circumstances of the offense charged; (2) the weight of the

7    evidence against defendant; (3) the defendant's character, physical and mental condition, family

8    and community ties, past conduct, history relating to drug or alcohol abuse, and criminal history;

9    and (4) the nature and seriousness of the danger to any person or to the community that would be

10   posed by the defendant's release.  18 U.S.C. § 3142(g); United States v. Winsor, 785 F.2d 755,

11   757 (9th Cir. 1986); Motamedi, 767 F.2d at 1407.

12       Congress intended that the statutory presumptions would have a practical effect.  United

13   States v. Jessup, 757 F.2d 378, 382 (1st Cir. 1985).  The presumptions do not disappear when a

14   defendant meets his or her burden of producing rebuttal evidence.  United States v. Hir, No. 07-

15   10500, 2008 U.S. App. LEXIS 3245, at *9 (9th Cir. Feb. 15, 2008) (citing United States v.

16   Dominguez, 783 F.2d 702, 707 (7th Cir. 1986)).  The presumptions remain as evidentiary

17   findings militating against release, to be weighed along with other evidence relevant to the

18   factors listed in Section 3142(g).  Id.  Indeed, the Act's presumption should be added as a factor

19   that supports pretrial detention under both rationales for detention.  See United States v. Perez-

20   Franco, 839 F.2d 867, 870 (1st Cir. 1988) (presumption a factor militating against release).

21   **C.**     **Defendant Has Not Rebutted The Presumption That He Is A Danger And A**
            **Flight Risk.**

22

23       Defendant has presented no facts sufficient to rebut the legal presumption that he is a

24   danger and a flight risk.  The only facts presented by Defendant thus far are: (1) Defendant was

25   attending required classes in connection with his 2006 DUI conviction; (2) Defendant's claimed

26   intent to self-surrender upon issuance of an arrest warrant; (3) that prior to execution of the

27   search warrant, Defendant provided care for his daughters; (4) an unsecured bond; and (5) that

28   Defendant would be placed at an unsecured halfway house.

1              **1.    Defendant's intent to self-surrender.**

2           This issue is addressed in the government's opposition papers previously filed under seal.

3                **2.    Defendant's care for his daughters.**

4          At the detention hearing, Defendant stated that he raised his twelve-year-old daughter

5    from the age of two, and he shares custody of his five-year-old daughter.  (Exhibit F, recording of

6    detention proceedings before Hon. Wayne D. Brazil on February 28, 2008.)  Defendant's

7    apartment, however, was a one-bedroom apartment.  (Exhibit B.)  Additionally, during the search

8    of Defendant's apartment, officers noticed only one article of children's clothing.

9          That being said, assuming Defendant provided care for his daughters, his daughters were

10    apparently present then at some point in the same apartment where the narcotics, scales,

11    packaging material, fireworks, and body armor were recovered.  Notably, the narcotics were

12    recovered from a cooler on the floor of Defendant's kitchen, and the box of fireworks was also

13    recovered from the floor of Defendant's kitchen - all within easy reach of Defendant's daughters.

14    Therefore, Defendant risked exposing his daughters to his illegal narcotics trafficking and to the

15    violence associated with narcotics trafficking.

16          Defendant asserts that his close relationship with his daughters should be considered by

17    the Court as a factor weighing against his willingness to flee.  Defendant admits, however, that

18    immediately following the execution of the search warrant in this case, he no longer provided

19    care for his daughters.  (Exhibit F.)  According to the Pre-Trial Services Report and Defendant,

20    after September 20, 2007, Defendant resided in various locations, including three hotels in three

21    separate cities.  (Id.)  Thus, while Defendant was apparently evading law enforcement between

22    the execution of the search warrant and his arrest in this case, he did not provide care for his

23    daughters.  Stated differently, Defendant's close relationship with his daughters did not mitigate

24    his willingness to flee from law enforcement between September 20, 2007 and his February 4,

25    2008 arrest.

26              **3.    Defendant's sureties.**

27          At the detention hearing, two people signed the bond and a third, Defendant's uncle, was

28    to be present to sign the bond the following day.  Defendant's uncle, however, failed to appear to

1  sign the bond.  (Minute Order dated February 29, 2008.)  As for the other sureties, their

2  unsupported promise to pay the bond should Defendant flee or re-offend does not rebut the

3  presumptions of danger and flight.  Nothing about their proposed bond would prevent Defendant

4  from leaving the halfway house to either flee or commit more crime.

### 4.    Placement in a halfway house.

6    The Ninth Circuit recently discussed the high-level of trust associated with non-custodial

7  conditions of pre-trial release.  Hir, 2008 U.S. App. LEXIS 3245 at *28-29.  The conditions

8  imposed in the Hir case included: (1) a ban on the possession of firearms; (2) a ban on contact

9  with certain individuals; (3) a ban on certain activities such as sending money overseas; and (4)

10 electronic monitoring.  Id. at *28.  The Ninth Circuit noted:  "Although these proposed

11 conditions of release are strict, they contain one critical flaw.  In order to be effective, they

12 depend on [the defendant's] good faith compliance."  Id. at *29.

13   The same is true in the instant case.  As noted by Judge Brazil during the detention

14 hearing, a halfway house is not jail and Defendant could walk out.  (Exhibit F.)  Additionally,

15 Defendant could continue to distribute narcotics from the halfway house via telephone or other

16 methods.  Thus, placement in a halfway house requires reliance on Defendant's "good faith

17 compliance."  Given Defendant's history of drug trafficking and lack of any legal employment,

18 there is no reason to believe that Defendant will remain in the halfway house or refrain from

19 selling narcotics.

### D.    Statutory Factors Requiring Detention.

21   Even if Defendant has rebutted the presumptions that he is a danger and a flight risk, the

22 statutory factors contained in 18 U.S.C. § 3142(g) establish that Defendant is a danger and a

23 flight risk and should be detained pending trial.

### 1.    Nature and circumstances of the offense charged (18 U.S.C. § 3142(g)(1)).

26   The amount of crack possessed by Defendant alone, approximately 240 grams, is almost

27 five times the amount necessary to trigger the ten-year mandatory minimum sentence under 21

28 U.S.C. § 841(b)(1)(B)(iii).  In addition to the crack, however, Defendant possessed enough

methamphetamine to trigger the same ten-year mandatory minimum sentence by itself. Defendant further possessed cocaine powder and marijuana for sale.  The shear volume of narcotics alone demonstrates that Defendant is a higher-level supplier of narcotics and a danger to the community.

### 2.    Weight of the evidence against Defendant (18 U.S.C. § 3142(g)(2)).

The evidence against Defendant is extremely strong as it was all recovered during a search warrant executed on Defendant's apartment.

### 3.    Defendant's history and characteristics (18 U.S.C. § 3142(g)(3)).

Defendant's criminal history, although minimal, should not be overlooked.  In 1994, Defendant was arrested for possession with intent to distribute a controlled substance and possession of a controlled substance.  Defendant pled guilty to simple possession in violation of California Health & Safety Code § 11350.  Although apparently Defendant's first adult conviction, he received 210 days in jail and thirty-six months probation.  That Defendant has previously spent only 210 days in jail provides him with a strong incentive to flee from the instant prosecution.  If convicted, Defendant faces at least a ten-year mandatory minimum sentence, and as much as a twenty-year mandatory minimum sentence if the government files an information alleging his prior felony narcotics conviction.

Moreover, Defendant's criminal history reflects only the crimes for which Defendant has been caught.  According to the Pre-Trial Services Report, since July 2007, Defendant has been unemployed, and prior to July 2007, Defendant's employment was sporadic.  Therefore, Defendant must have had means other than lawful employment to pay for his rent, car, necessities, and the various hotels in which he stayed between September 2007 and February 2008.  In this regard, defense counsel proffered at the detention hearing that Defendant supported himself from the proceeds of his illegal narcotics trafficking at least between September 2007 and February 2008.  (Exhibit F.)

Additionally, although Defendant denies any substance abuse problem, he admits to regular use of ecstasy (approximately once a month) and marijuana for approximately one year prior to the execution of the search warrant on his house; and, he admits to regular use of

marijuana (approximately twice a week) up until the date of his arrest in the instant case. (Exhibit F.)  Defendant has also been arrested on at least five separate occasions for violent offenses such as battery, sexual battery, and assault with a deadly weapon.

### 4.    Defendant poses a serious danger to the community if released.

As discussed above, the law presumes that Defendant is a danger to the community. Even if Defendant rebuts it, the Court must still consider this presumption as evidence that Defendant is a danger to the community.  Hir, 2008 U.S. App. LEXIS 3245 at *9.

In addition to the serious danger Defendant's drug trafficking poses to the community, the violence commonly associated with drug trafficking poses a further danger to the community. Defendant recognized and attempted to mitigate the physical dangers associated with drug trafficking through the use of home security equipment and body armor.  Defendant proffered at the detention hearing that the body armor was from the 1990s and belonged to his brother. (Exhibit F.)  Yet, Defendant maintained the body armor in his bedroom closet and had apparently done so for many years.  Regardless of to whom the body armor belonged, Defendant maintained it close at hand should he ever need it.  If Defendant is released from custody, he poses a danger not only as a drug supplier, but also as a potential target for violence by others involved in the drug trade.

### CONCLUSION

For these reasons, the government respectfully requests that this Court find that Defendant has failed to rebut the statutory presumptions that he is a danger and a flight risk and order him detained pending trial.  Alternatively, the government asks that this Court find that the government has established by clear and convincing evidence that Defendant is a danger to the community and by a preponderance of the evidence that he poses a flight risk, and that there are

////

////

////

////

////

1  no conditions or combination of conditions that will reasonably assure the safety of the

2  community and his appearance in court.

3

4  DATED: March 3, 2008                                  Respectfully submitted,

5                                                        JOSEPH P. RUSSONIELLO
                                                         United States Attorney
6

7                                                        _____/s/_____

8                                                        JAMES C. MANN
                                                         Assistant United States Attorney
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

## COUNTY OF CONTRA COSTA, STATE OF CALIFORNIA

### AFFIDAVIT FOR SEARCH WARRANT    No. _____

On the basis of his/her personal knowledge and on the basis of other information contained in the attachments hereto, **Detective Nicholas Gartner** Affiant being duly sworn, deposes and says that there is probable cause to believe the **property** and **thing(s)** described herein may be found at the location(s) set forth and that the following provisions of California Penal Code Section 1524 are applicable:

_____    the property was stolen or embezzled - Penal Code 1524(a)(1).

__x__    the property or thing(s) were used as the means of committing a felony  - Penal Code 1524(a)(2).

__x__    the property or thing(s) are in the possession of any person with the intent to use it as a means of committing a public offense; OR are in the possession of another to whom he or she may have delivered it for the purpose of concealing it or preventing it from being discovered  – Penal Code 1524(a)(3).

__x__    the property or thing(s) consist of any item or constitutes any evidence that tends to show a felony has been committed or tends to show that a particular person has committed a felony;

and requests the issuance of a warrant to search:

**THE PREMISES** located at and described as: N/A



including basements, attics, storage spaces, appurtenant buildings, the surrounding grounds, and all containers therein and thereon which could contain any of the items sought. Strike out inapplicable words;

**THE CONTAINER(S)** located at and described as:  N/A

**THE VEHICLE(S)** described as:
Off white 2001 4-door Cadillac with gold tint and yellow paper plates from Lehmer's of Concord.

including the passenger compartment, storage areas such as trunk and glove box, and any containers within the vehicle(s) which could contain any of the items sought. Strike out inapplicable words

**THE PERSON(S)** of:
Mashavu Tivon Turner

Black male/5'11"tall/200lbs/Black hair/Brown eyes

MT-070

AFFIDAVIT - PAGE 1

1.98

FOR THE FOLLOWING **PROPERTY or THINGS** listed below:

1)      Cocaine in any form.

2)      Paraphernalia associated with the preparation of rock cocaine for sales including but not limited to scales, measuring spoons, sifters, packaging materials, cutting agents, plastic bags, etc.

3)      Paraphernalia associated with the use of rock cocaine to include but not limited to razor blades, glass smoking pipes, lighters, etc;

4)      Documents or records associated with the sales of rock cocaine including customer lists, notebooks, address books, telephone lists, pay/owe sheets, tally lists of money and quantity of substance being sold, and loose papers containing names, quantities of substance sold, amounts of money owed and paid;

5)      Indicia of occupancy, residency, control or ownership of the premises and things described in this warrant including lease agreements, deeds of trust, mortgage records, rent receipts, utility bills, personal correspondence, telephone bills, keys, and photographs;

6)      Any safe or locked container found on the property that cannot be easily opened and is suspected to contain evidence of rock cocaine possession or sales;

7)      Firearms and ammunition;

8)      Cellular telephones, pagers, answering machines and tapes, and other communication devices that evidence narcotics distribution;

9)      Records, documents, deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other valuable items obtained with the proceeds of the sales of narcotics;

10)      Bank account records, wire transfer records, bank statements, safety deposit keys and records, money wrappers, money containers, income tax returns, evidence of financial transfers or movement of money generated from the sale of narcotics;

11)      The officers serving the search warrant are hereby authorized to answer any telephone calls (including cellular telephones) being placed to the premises being searched and to converse with the callers in an undercover capacity and without revealing the identity of the officers. This may be done only as long as the officers are searching for other items listed on this search warrant. The officers also may listen to, note, and record any messages left on any telephone answering device or tape recorder located therein for each location to be searched;

12)      Surveillance systems including monitors, cameras, microphones, speakers, connecting cords and wires, alarms, and videotape machines;

13)      United States Currency.



MT-071

1.98

AFFIDAVIT - PAGE 2

The Attachments indicated below are incorporated into this Affidavit by reference and by physical attachment as though set forth here word-for-word; probable cause contained in:

_✗_   Narrative Statement Of Probable Cause.

____   The following listed official police reports and records; and documents, exhibits and photographs: Strike out inapplicable words

_✗_   Statement(s) of expertise and opinion:

I/we have reasonable cause to believe that grounds exist for the issuance of a search warrant based on the content of this affidavit which includes the above-referenced attachments, and pray that a search warrant be issued. **I/we certify (or declare) under penalty of perjury** under the laws of the State of California that the information in this Affidavit is true and correct:

_____          _____
            **Affiant**                              **Affiant**

Subscribed to and sworn before me this _____ day of _____, 20__, at _____ AM - PM

_____ Judge of the _____ Court
      Magistrate's Signature                  Name (level) of Court

_____
       Judicial District if Applicable

MT-072

AFFIDAVIT - PAGE 3

SUMMARY OF EXPERTISE
(Nicholas Gartner)

EDUCATION:    B.A in Political Science & Minor in International Relations
California State University, Chico, 1996.

CAREER:    Drug Enforcement Administration (DEA) Task Force Officer,
Oakland Resident Office: July 2007 - Present
Concord Police Narcotics Detective: January 2006 - Present
Concord Police Special Enforcement Team: May 2004 – January 2006
Concord Police Patrol Officer: August 2002 – May 2004
Walnut Creek Police Patrol Officer: August 1998 – August 2002

TRAINING:    POST Basic, Intermediate and Advanced Certificates
Basic Police Academy (Narcotics) Los Medanos College , 8 hours, 1998
Field Narcotic Training Walnut Creek, 1998
Analytical Interview Course, P.O.S.T 40 hours 1999
California Narcotic Officer Association (CNOA) Drug Recognition Training, 8 hours 2004.
In House Concord Police Drug Recognition Training, 4 hours 2004
Qualified expert in HS 11550 investigations, Contra Costa County Superior Court 2005.
Qualified expert in HS 11378 investigations, Contra Costa County Superior Court 2005.
Qualified expert in HS 11351.5 and HS 11351 investigations, Contra Costa County
Superior Court 2005.
Search Warrant Development CNOA Conference November 2005, 4 hours
Walls & Wire Taps CNOA Conference November 2005, 4 hours
Identity Theft & Methamphetamine CNOA Conference November 2005, 4 hours
Undercover Operations & Tactical Response CNOA Conference November 2005, 4 hours
Southwest Drug Connection CNOA Conference November 2005, 4 hours
Two Undercover Cocaine Hcl Buys – 2006
Fifteen Undercover Methamphetamine Buys – 2006/2007
One Undercover Heroin Buy – 2007
Six Undercover Cocaine Base Buy - 2007
Department of Justice Narcotics Investigations School – 80 hours, October 2006
Concealment/Countersurveillance Techniques – CNOA November 2006, 4 hours
Narco Trafficking and the Spiritual World – CNOA November 2006, 4 hours
Risk Management – CNOA November 2006, 4 hours
Undercover Techniques – CNOA November 2006, 4 hours
Tactical Decision Making – CNOA November 2006, 4 hours
DEA Clandestine Lab Certification – Quantico Va., 02/07, 40 hours
Department of Justice Informant Management – San Diego Ca, 02/07, 20 hours

EXPERIENCE:    I, Nicholas Gartner, am a Police Detective currently assigned to the Special Investigations
Bureau of the Concord Police Department. I have been a police officer for over 9 years and
I have been working for the Concord Police Department for the past 5 years.

During my career, I have conducted preliminary and follow-up investigations on a variety
of crimes ranging from theft to felony assaults, with a specific emphasis on narcotics
investigations. These investigations involved preparing police reports, collecting and
preserving evidence, arresting suspects, interviewing victims and witnesses, interrogating
suspects, testifying in court proceedings, conducting controlled buys for illegal controlled
substances and purchasing illegal controlled substances in an undercover capacity.



1.98    AFFIDAVIT - PAGE 4    MT-073

I have written and served search warrants that resulted in the finding and collecting of the desired evidence sought in the warrants. I have investigated more than 150 methamphetamine possession cases, 50 methamphetamine sale cases, 100 under the influence of central nervous system stimulant cases, 6 clandestine lab cases, 4 marijuana cultivation cases, 1 mushroom cultivation case, 100 narcotic paraphernalia cases and more than 12 possession/sales of cocaine and cocaine base investigations. I have also written more than 25 search warrants related to controlled substance sales investigations and I have assisted with more than 100 search warrants and probation searches related to drug offenses.

I have had numerous conversations with Walnut Creek Narcotic Officers and Concord Police Detectives/Narcotic Officers in relation to current narcotic trends. I have spoken with over 1000 suspects and confidential informants who have discussed their possessions, use, possession for sale, and packaging methods of controlled substances. I am a member of the California Narcotic Association and I keep up to date with current drug trends throughout California by reading their monthly magazine. I have also read several articles related to marijuana plant cultivation and psychedelic mushroom cultivation and continue to update my expertise relating to the Compassionate Use Act of 1996.

Based on my training and experience, I have a good working knowledge of circumstances involved around the use, possession, cultivation, manufacturing, transportation and possession for sale of controlled substances, narcotics and other drugs.

MT-074

STATEMENT OF PROBABLE CAUSE

On 08/29/07 I spoke with a Confidential Reliable Informant, hereafter referred to as CRI. Within the past 6 months, CRI has been proven reliable on two occasions by████████████████████████████████. Per████████████ CRI's information and cooperation has led to the arrest of two people, the seizure of controlled substances and a firearm. Per████████████ CRI was willing to cooperate in exchange for consideration in a pending criminal matter in Contra Costa County. ████████████did not know CRI to have lied to law enforcement in the past.

Since 08/29/07 CRI has corroborated information other confidential informants have provided the Concord Police Narcotics Unit regarding drug dealers operating in Contra Costa County. CRI was willing to speak with me in exchange for consideration in a pending criminal matter in Contra Costa County. I have reviewed CRI's criminal history and I have no knowledge of CRI lying to law enforcement in the past.

CRI told me he/she knows a rock cocaine drug dealer named "T." CRI told me "T" is a black male who is between 32-35 years old, approximately 5'10" tall with short black hair. CRI told me "T" lives in an apartment complex located ████████████████████████████████████████████ CRI told me as you enter the apartment complex████████████████"T's" apartment door ████████████████████████CRI told me "T's" phone number is████████████nd that "T" drives a gold colored Cadillac with paper plates.

Within the past ten days of today, I checked phone number████████████through the Concord Police Records System (CMS). Per CMS, phone number████████████belongs to Mashavu Tivon Turner with the date of birth of████████, Mashavu Tivon Turner has 5 different contacts listed in CMS. The investigations associated with Mashavu Tivon Turner are 06-04926 (domestic violence arrest), 06-18472 (driving under the influence arrest), 07-01187 (victim of a residential burglary), 07-07428 (registered owner of a vehicle documented in arrest report) and 07-20218 (witness of an accident). In all 5 of these investigations, Mashavu Tivon Turner's listed residence is ████████████████████████

Per the Department of Motor Vehicles, Mashavu Tivon Turner is a black male with the date of birth of ████████. Per the Department of Motor Vehicles, Mashavu Tivon Turner is 5'11" tall and weighs 200 pounds. Per the Department of Motor Vehicles, Mashavu Tivon Turner's address as of 07/18/06 is ████████████████████████

Per Mashavu Tivon Turner's criminal history, Mashavu Tivon Turner received a felony conviction on 10/06/95 for possession of a controlled substance, a violation of Health and Safety Code Section 11350.

Per the Contra Costa County Probation database, Mashavu Tivon Turner is on probation through 10/04/10 for driving under the influence of alcohol/drugs, a violation of California Vehicle Code Section 23152(a/b). Per the Contra Costa County Probation database, Mashavu Tivon Turner's listed address is████████████████████████

Within the past 15 days of today, I showed CRI a Concord Police booking photo of Mashavu Tivon Turner that was dated 08/04/06. I showed this photo to CRI in a manner that did not display any of Mashavu Tivon Turner's personal information. CRI positively identified Mashavu Tivon Turner as the person he/she knows as "T." CRI positively identified Mashavu Tivon Turner as the person who he/she knows to sell rock cocaine in Contra Costa County. CRI positively identified Mashavu Tivon Turner as the person he/she knows to live ████████████████████████████nd as the same person he/she knows to drive a gold colored Cadillac with paper plates.

On 08/30/07 I conducted surveillance at ████████████████████████ At 1620 hours, I saw an off white colored Cadillac with a gold tint and yellow Lehmer's of Concord paper plates parked in front of the apartment. Inside the Cadillac I saw Mashavu Tivon Turner sitting in the driver seat and an unidentified Hispanic female sitting in the front passenger seat. The unidentified Hispanic female had curly brown hair and appeared to be approximately 35 years old.

1.98

MT-075

On 08/30/07 at 1631 hours, I watched Mashavu Tivon Turner use a key to enter the front door of ███████████. I took note that ████████████████████████████████ just as CRI had described.

On 08/30/07 between 1631 hours and 1700 hours, I watched Mashavu Tivon Turner enter and exit ███ ██████████████ two times and walk around the property.

On 08/30/07 at approximately 1700 hours, I watched Mashavu Tivon Turner leave ████████ driving his off white colored Cadillac with a gold tint and yellow paper plates. Concord Police Narcotics Unit conducted a mobile surveillance on Mashavu Tivon Turner. The surveillance led to Pittsburg Ca.

During the surveillance, Mashavu Tivon Turner was seen conducting counter surveillance driving tactics. Counter surveillance driving tactics are used by drug dealers to detect the presence of police surveillances. The counter surveillance driving tactics observed during this surveillance included repeated driving routes, driving through commercial lots without using the services present, intense attention to roadway traffic and a vehicle switch.

The repeated driving routes took place in the neighborhood of Placer Dr between Willow Pass Rd and Bailey Rd. Detective Roberts and I watched Mashavu Tivon Turner repeat his driving route in this neighborhood two times within a couple minutes.

After witnessing Mashavu Tivon Turner repeat his driving route, I watched Mashavu Tivon Turner enter the commercial parking lot located at 2711 Willow Pass Rd via the Willow Pass Rd entrance/exit. I then watched Mashavu Tivon Turner drive through the lot without stopping and exit the parking lot back onto Bailey Rd, yet again retracing his driving route.

I also witnessed Mashavu Tivon Turner get his car washed at The Car Wash located at 2845 Willow Pass Rd in Pittsburg. As Mashavu Tivon Turner had his car washed, Mashavu Tivon Turner looked around the area and paid lots of notice to the traffic passing on Willow Pass Rd.

After Mashavu Tivon Turner had his Cadillac washed, I watched him park his Cadillac at 3105 Willow Pass Rd. I watched Mashavu Tivon Turner remain in the parking lot for approximately 15 minutes. I then watched Mashavu Tivon Turner leave this Cadillac in the parking lot and exit the parking lot driving a grey colored Toyota with paper plates.

On 08/30/07 at approximately 1757 hours I watched Deputy Roberts of the Contra Costa County Sheriffs Department conduct a traffic stop on the grey colored Toyota with paper plates at the corner of Willow Pass Rd and Marys Ave in Pittsburg. Per Deputy Roberts, the traffic stop was for violation of California Vehicle Code Section 5200.

Per Deputy Roberts, the driver of the vehicle identified himself as Mashavu Tivon Turner via a California Index Card. Per Deputy Roberts, a consent search of Mashavu Tivon Turner's vehicle and person were granted. Per Deputy Roberts, no drugs were located however approximately $3000.00 cash was found on Mashavu Tivon Turner's person. Per Deputy Roberts, when asked about the large amount of cash, Mashavu Tivon Turner told Deputies the cash was the result of "personal business."

On 08/30/07 at approximately 1802 hours I watched Deputy Hunter of the Contra Costa County Sheriffs Department conduct a traffic stop on Mashavu Tivon Turner's Cadillac at the corner of Willow Pass Rd and Weldon Ave. Per Deputy Roberts, the traffic stop was for violation of California Vehicle Code Section 5200.

Per Deputy Roberts and Contra Costa County Sheriff dispatch, the person driving the Cadillac was identified via a California Driver License as ████████████ with the date of birth of ████████ Per Deputy Roberts, a consent search was conducted on the Cadillac with assistance from Deputy Roberts' drug certified K9. Per Deputy Roberts, K9 Freddy is POST and CNCA certified to detect the presence of cocaine, methamphetamine,

MT-076

heroin and marijuana. Per Deputy Roberts, over the past 4 years K9 Freddy has successfully detected more than 10 lbs of methamphetamine and more than 10 lbs of cocaine. Per Deputy Roberts, K9 Freddy gave positive alerts to the odor of controlled substances present in the driver door area and trunk area of the Cadillac. Per Deputy Roberts, a subsequent hand search of the Cadillac was conducted and no drugs were located. Per Deputy Roberts, ████████ made it clear prior to the search that the Cadillac was not ███

Per Contra Costa County Sheriff dispatch, the assigned license plate for the Cadillac ████████ was stopped in is ████

The surveillance on 08/30/07 concluded at approximately 1830 hours.

On 09/12/07 I spoke with the Department of Motor Vehicles out of Sacramento Ca. Per the Department of Motor Vehicles, license plate ████ is a 2001 4-door Cadillac with pending registration to ████ ████

On the afternoon of 09/12/07 I saw Mashavu Tivon Turner driving outbound Willow Pass Rd near Landana Dr in his off white and gold tinted Cadillac with paper plates from Lehmer's of Concord.

Within the past ten days of today, I spoke with CRI. CRI told me that within the past ten days of today, he/she saw "T" (positively identified as Mashavu Tivon Turner ████) in possession of a large quantity of rock cocaine. CRI told me he/she also saw "T" sell a specific amount of rock cocaine while in possession of the larger quantity of rock cocaine. CRI told me his/her observations were within the boundaries of Contra Costa County.

I wish to keep the identity of CRI confidential because I believe that the disclosure of CRI's identity would endanger CRI's safety, in that informants have been threatened, harmed, injured and killed as a result of persons discovering their roles as police informants. I also believe that disclosure will alert those engaged in criminal activities of the identity of CRI and CRI's association with police, thus impairing the future usefulness of CRI.

For further information regarding CRI's observations, please see the sealed portion of this search warrant.



MT-077

AFFIDAVIT - PAGE 8

OPINION

Based on the information provided in this affidavit, I believe that Mashavu Tivon Turner ▬▬▬▬) is also known as "T." I believe that Mashavu Tivon Turner is a drug dealer who sells rock cocaine in Contra Costa County. I believe that Mashavu Tivon Turner lives at ▬▬▬▬▬▬▬▬and that Mashavu Tivon Turner drives an off white colored Cadillac with gold tint and yellow paper plates from Lehmer's of Concord. I believe Mashavu Tivon Turner demonstrated counter surveillance driving tactics on 08/30/07 because he felt police were following him. I believe that a search of Mashavu Tivon Turner's residence, person and any vehicles under his care, custody or control will produce evidence of rock cocaine sales.

Persons who sell rock cocaine often keep additional amounts in their home, outbuildings and vehicles, as well as on their persons, for future use and/or sale. Persons who sell rock cocaine do not carry their entire supply of rock cocaine on their person because of the ever present danger of being robbed by the persons they sell rock cocaine to and because it is common knowledge among narcotic dealers that the penalty for being arrested for possession for sales of larger quantities is usually more severe than possession only; thus motivating them to carry smaller quantities on their persons.

Persons who sell and/or use rock cocaine will possess items used to facilitate the use and/or sales including but not limited to scales, glass pipes, syringes, needles, straws, razor blades, mirrors, metal or glass "snorting" tubes and cutting agents such as baking soda.

Persons who sell rock cocaine will often keep records showing names, amounts sold, and outstanding balances (pay/owes). Rock cocaine and associated paraphernalia will often be stored in locked storage areas such as safes, lockboxes, etc. Outbuildings and appurtenances will often store additional rock cocaine and associated paraphernalia. Indicia of occupancy will often assist in showing dominion and control of items seized.

Persons who sell rock cocaine often use the telephone (and cellular phones) to contact the source of their rock cocaine supply and to conduct sales. Persons who sell rock cocaine are often contacted by telephone by persons wishing to buy rock cocaine. Buyers commonly contact rock cocaine dealers by telephone to ascertain that they have a sufficient amount of rock cocaine available for sale. The use of police officers answering such phone calls in an undercover capacity can yield vital evidence supporting the presence of narcotic sales.

I also know from common everyday experience and from police experience that personal property including but not limited to rent receipts, utility bills, personal correspondence, photographs, etc. are present where a person lives and often present in their vehicle. Such items are of evidentiary value in proving the identity of the person or persons in possession of contraband items found in those locations as well as in proving their knowledge of the contraband.

Dangerous drug trafficking is a crime in which pecuniary gain is generally the motive. I believe the financial records of Mashavu Tivon Turner will provide evidence of drug trafficking through unexplained wealth and cash transactions. It has been my experience that persons who distribute rock cocaine often keep police radio scanner receivers in their residences to alert them to police activity that might involve them and their illicit business.

It has been my experience that people who distribute rock cocaine often maintain surveillance systems so they can detect law enforcement and/or people who may try to rob them. These surveillance systems include monitors, cameras, microphones, speakers, connecting cords and wires, alarms, and videotape machines.

It has been my experience that people who sell controlled substances including rock cocaine often possess firearms to protect themselves if they are robbed, and as a means of threatening customers who fail to pay debts for controlled substances.

MT-078

1.98                              AFFIDAVIT - PAGE 10

# EXHIBIT B

| COPIED | DATA ENTRY | STATS | LEGAL | ROUTED | | | | | | | | |
|--------|-----------|-------|-------|--------|--|--|--|--|--|--|--|--|
| ORIG X | SUPP | ADULT | JUV | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |

CONCORD POLICE DEPARTMENT

# OFFENSE REPORT

**CR #** ▮▮▮▮▮▮▮

PAGE 1

| DATE AND TIME REPORTED | | | | | |
|---|---|---|---|---|---|
| 09/20/07    10:31 | | | | | |

| OCCURRED DATE | ENDING DATE | OCCURRED TIME | ENDING TIME | LOCATION |
|---|---|---|---|---|
| 09/20/07 | 09/20/07 | 10:31 | 11:56 | ▮▮▮▮▮▮▮ |

| ROUTING |
|---|
| SPECIAL INVESTIGATIONS |

| CLASSIFICATION | |
|---|---|
| 11351.5 | POSSESS/PURCHASE COCAINE BASE FOR SALE |
| 11351 | POSSESS/PURCHASE FOR SALE NARCOTIC/CONTROLLED SUBS |
| 11378 | POSSESS CONTROLLED SUBSTANCE FOR SALE |
| 11359 | POSSESS MARIJUANA/HASHISH FOR SALE |
| 12702(C) | SELL/ETC 7500 GRAINS OR MORE DANG FIREWORKS TO UND |
| 14601(A) | DRIVE WITH SUSPENDED LICENSE |
| 1203.2 | PROBATION VIOLATION |

PERSON INVOLVEMENT CODES:   A - ARRESTEE  S - SUSPECT  K - C/V  V - VICTIM  C - COMPLAINANT  J - SUBJECT  W - WITNESS  B - BUSINESS VICTIM  O - OWNER

| INVL | LAST NAME, FIRST MIDDLE | | | HOME PHONE | | BUS. PHONE |
|---|---|---|---|---|---|---|
| A | TURNER, MASHAVU TIVON | | | | | N/P |

| ADDRESS | | CITY | STATE | ZIP | SOCIAL SECURITY NO |
|---|---|---|---|---|---|
| ▮▮▮▮ | | ▮▮▮ | ▮▮ | ▮▮ | ▮▮▮ |

| OLN/ID NO. | STATE | DOB | AGE | RACE | SEX | HEIGHT | WEIGHT | HAIR | EYES |
|---|---|---|---|---|---|---|---|---|---|
| ▮▮▮ | CA | ▮▮▮ | 32 | B | M | 511 | 200 | BLK | BRO |

| ADDITIONAL INFORMATION |
|---|
| |

VEHICLE INVOLVEMENT CODES: A - ARRESTEE  S - SUSPECT  R - RECOVERED  N - STORED  P - PARKED  V - VICTIM  X - STOLEN  I - IMPOUNDED  O - RELEASED TO OWNER  Z - REPOSSESSION

| INVL | LICENSE | STATE / EXP | YEAR | MAKE | MODEL | STYLE | COLOR | VIN # |
|---|---|---|---|---|---|---|---|---|
| A | ▮▮▮ | CA/ | 2001 | CADI | DEV | 4D | WHI | ▮▮▮ |

| REGISTERED OWNER | ADDRESS | |
|---|---|---|
| ▮▮▮ | ▮▮▮ | |

| ADDITIONAL INFORMATION / UNIQUE FEATURES | VALUE |
|---|---|
| | $0.00 |

PROPERTY INVOLVEMENT CODES

| INVOLVEMENT CODES | CATEGORY CODES | | DISPOSITION CODES | |
|---|---|---|---|---|
| E - Evidence   K - Safekeeping | A - Automotive | B - Bicycle | C - Camera | P - Property Room | **STOLEN: $** |
| S - Stolen   F - Found | E - Equipment/Tools | H - Household Appliances | M - Musical Instruments | R - Returned to Owner | |
| R - Recovered   L - Lost | O - Office Equipment | P - Personal Accessories | R - Radio/Sound Devices | O - Other | |
| O - Safety of Others | S - Sports Equipment | T - TV | V - Viewing Equipment | | **RECOVERED: $** |
| | Y - Other | D - Dollars/Money | K - Credit Cards | | |

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 1 | E | Y | ARMITRON | IIIA | | | P |
| ARTICLE | | | | | | | |
| BODY ARMOR | | | | | | | |

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 2 | E | Y | US MAGNUM | 500G MAX WEIGHT | | | P |
| ARTICLE | | | | | | | |
| DIGITAL SCALE | | | | | | | |

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3 | E | Y | GLACIER GEAR | | | | P |
| ARTICLE | | | | | | | |
| GLACIER COOLER SHOULDER CASE | | | | | | | |

MT-012

| REPORTING OFFICER & I.D. # | BEAT | DATE AND TIME WRITTEN | SUPERVISOR APPROVING | TYPIST | DATE AND TIME REPORT TYPED  V 6.1.20 |
|---|---|---|---|---|---|
| GARTNER #0443 | 5 | 09/20/07 12:30 | 0250 GARTNER | NG | 09/20/07 12:30 |

CONCORD POLICE DEPARTMENT

# OFFENSE REPORT

CR #: ■■■■■■■

PAGE 2

## PROPERTY INVOLVEMENT CODES

| INVOLVEMENT CODES | CATEGORY CODES | | | DISPOSITION CODES | |
|---|---|---|---|---|---|
| E - Evidence    K - Safekeeping | A - Automotive | B - Bicycle | C - Camera | P - Property Room | **STOLEN: $** |
| S - Stolen      F - Found | E - Equipment/Tools | H - Household Appliances | M - Musical Instruments | R - Returned to Owner | |
| R - Recovered   L - Lost | O - Office Equipment | P - Personal Accessories | R - Radio/Sound Devices | O - Other | |
| O - Safety of Others | S - Sports Equipment | T - TV | V - Viewing Equipment | | **RECOVERED: $** |
| | Y - Other | D - Dollars/Money | K - Credit Cards | | |

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3A | E | Y | | | | | P |
| ARTICLE | | | | | | | |
| BLACK PLASTIC BAG | | | | | | | |

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3AA | E | Y | | | | | P |
| ARTICLE | | | | | | | |
| PACKAGING MATERIAL FROM ITEM 3Z. | | | | | | | |

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3B | E | Y | | | | | P |
| ARTICLE | | | | | | | |
| ZIPLOC PLASTIC BAG | | | | | | | |

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3BB | E | Y | | | | | P |
| ARTICLE | | | | | | | |
| APPROX. 4.0 GRAMS OF WHITE POWDERY SUBSTANCE. | | | | | | | |

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3C | E | Y | | | | | P |
| ARTICLE | | | | | | | |
| APPROX. 29.0 GRAMS OF OFF WHITE/YELLOWISH CHUNK LIKE SUBSTANCE. | | | | | | | |

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3CC | E | Y | | | | | P |
| ARTICLE | | | | | | | |
| PACKAGING MATERIAL FROM ITEM 3BB. | | | | | | | |

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3D | E | Y | | | | | P |
| ARTICLE | | | | | | | |
| PACKAGING MATERIAL FROM ITEM 3C. | | | | | | | |

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3DD | E | Y | | | | | P |
| ARTICLE | | | | | | | |
| CLEAR ZIPLOC PLASTIC BAG. | | | | | | | |

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3E | E | Y | | | | | P |
| ARTICLE | | | | | | | |
| APPROX. 29.0 GRAMS OF OFF WHITE/YELLOWISH CHUNK LIKE SUBSTANCE. | | | | | | | |

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3EE | E | Y | | | | | P |
| ARTICLE | | | | | | | |
| APPROX. 29.0 GRAMS OF PINKISH CRYSTALLIZED SUBSTANCE. | | | | | | | |

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3F | E | Y | | | | | P |
| ARTICLE | | | | | | | |
| PACKAGING MATERIAL FROM ITEM 3E. | | | | | | | |

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3FF | E | Y | | | | | P |
| ARTICLE | | | | | | | |
| PACKAGING MATERIAL FROM ITEM 3EE. | | | | | | | |

MT-013

| REPORTING OFFICER & I.D. # | BEAT | DATE AND TIME WRITTEN | SUPERVISOR APPROVING | TYPIST | DATE AND TIME REPORT TYPED  V 8 1.261 |
|---|---|---|---|---|---|
| GARTNER #0443 | 5 | 09/20/07 12:30 | 0250 GARTNER | NG | 09/20/07 12:30 |

CONCORD POLICE DEPARTMENT

# OFFENSE REPORT

CR #

PAGE 3

| PROPERTY INVOLVEMENT CODES | | | | | | | |
|---|---|---|---|---|---|---|---|

**INVOLVEMENT CODES**
E - Evidence    K - Safekeeping
S - Stolen      F - Found
R - Recovered   L - Lost
O - Safety of Others

**CATEGORY CODES**
A - Automotive
E - Equipment/Tools
O - Office Equipment
S - Sports Equipment
Y - Other

B - Bicycle
H - Household Appliances
P - Personal Accessories
T - TV
D - Dollars/Money

C - Camera
M - Musical Instruments
R - Radio/Sound Devices
V - Viewing Equipment
K - Credit Cards

**DISPOSITION CODES**
P - Property Room
R - Returned to Owner
O - Other

**STOLEN: $**

**RECOVERED: $**

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3G | E | Y | | | | | P |
| ARTICLE | | | | | | | |

APPROX. 29.0 GRAMS OF OFF WHITE/YELLOWISH CHUNK LIKE SUBSTANCE.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3GG | E | Y | | | | | P |
| ARTICLE | | | | | | | |

APPROX. 29.0 GRAMS OF PINKISH CRYSTALLIZED SUBSTANCE.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3H | E | Y | | | | | P |
| ARTICLE | | | | | | | |

PACKAGING MATERIAL FROM ITEM 3G.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3HH | E | Y | | | | | P |
| ARTICLE | | | | | | | |

PACKAGING MATERIAL FROM ITEM 3GG.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3I | E | Y | | | | | P |
| ARTICLE | | | | | | | |

APPROX. 29.0 GRAMS OF OFF WHITE/YELLOWISH CHUNK LIKE SUBSTANCE.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3II | E | Y | | | | | P |
| ARTICLE | | | | | | | |

APPROX. 29.0 GRAMS OF PINKISH CRYSTALLIZED SUBSTANCE.

| # | INV. | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3J | E | Y | | | | | P |
| ARTICLE | | | | | | | |

PACKAGING MATERIAL FROM ITEM 3I.

| # | INV. | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3JJ | E | Y | | | | | P |
| ARTICLE | | | | | | | |

PACKAGING MATERIAL FROM ITEM 3II.

| # | INV. | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3K | E | Y | | | | | P |
| ARTICLE | | | | | | | |

APPROX. 29.0 GRAMS OF OFF WHITE/YELLOWISH CHUNK LIKE SUBSTANCE.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3KK | E | Y | | | | | P |
| ARTICLE | | | | | | | |

APPROX. 29.0 GRAMS OF PINKISH CRYSTALLIZED SUBSTANCE.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3L | E | Y | | | | | P |
| ARTICLE | | | | | | | |

PACKAGING MATERIAL FROM ITEM 3K.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3LL | E | Y | | | | | P |
| ARTICLE | | | | | | | |

PACKAGING MATERIAL FROM ITEM 3KK.

MT-014

| REPORTING OFFICER & I.D. # | BEAT | DATE AND TIME WRITTEN | SUPERVISOR APPROVING | TYPIST | DATE AND TIME REPORT TYPED   V 6.1.261 |
|---|---|---|---|---|---|
| GARTNER #0443 | 5 | 09/20/07 12:30 | 0250 GARTNER | NG | 09/20/07 12:30 |

CONCORD POLICE DEPARTMENT

CR #

# OFFENSE REPORT

PAGE 4

**PROPERTY INVOLVEMENT CODES**

| INVOLVEMENT CODES | CATEGORY CODES | | DISPOSITION CODES | |
|---|---|---|---|---|
| E - Evidence   K - Safekeeping | A - Automotive | B - Bicycle | C - Camera | P - Property Room |
| S - Stolen   F - Found | E - Equipment/Tools | H - Household Appliances | M - Musical Instruments | R - Returned to Owner |
| R - Recovered  L - Lost | O - Office Equipment | P - Personal Accessories | R - Radio/Sound Devices | O - Other |
| O - Safety of Others | S - Sports Equipment | T - TV | V - Viewing Equipment | |
| | Y - Other | D - Dollars/Money | K - Credit Cards | |

STOLEN: $

RECOVERED: $

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3M | E | Y | | | | | P |

ARTICLE
APPROX. 29.0 GRAMS OF OFF WHITE/YELLOWISH CHUNK LIKE SUBSTANCE.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3MM | E | Y | | | | | P |

ARTICLE
APPROX. 29.0 GRAMS OF PINKISH CRYSTALLIZED SUBSTANCE.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3N | E | Y | | | | | P |

ARTICLE
PACKAGING MATERIAL FROM ITEM 3M.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3NN | E | Y | | | | | P |

ARTICLE
PACKAGING MATERIAL FROM ITEM 3MM.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3O | E | Y | | | | | P |

ARTICLE
APPROX. 29.0 GRAMS OF OFF WHITE/YELLOWISH CHUNK LIKE SUBSTANCE.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3OO | E | Y | | | | | P |

ARTICLE
APPROX. 29.0 GRAMS OF PINKISH CRYSTALLIZED SUBSTANCE.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3P | E | Y | | | | | P |

ARTICLE
PACKAGING MATERIAL FROM ITEM 3O.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3PP | E | Y | | | | | P |

ARTICLE
PACKAGING MATERIAL FROM ITEM 3OO.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3Q | E | Y | | | | | P |

ARTICLE
APPROX. 29.0 GRAMS OF OFF WHITE/YELLOWISH CHUNK LIKE SUBSTANCE.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3QQ | E | Y | | | | | P |

ARTICLE
APPROX. 29.0 GRAMS OF PINKISH CRYSTALLIZED SUBSTANCE.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3R | E | Y | | | | | P |

ARTICLE
PACKAGING MATERIAL FROM ITEM 3Q.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3RR | E | Y | | | | | P |

ARTICLE
PACKAGING MATERIAL FROM ITEM 3QQ.

MT-015

CONCORD POLICE DEPARTMENT

# OFFENSE REPORT

PAGE 5

## PROPERTY INVOLVEMENT CODES

| INVOLVEMENT CODES | CATEGORY CODES | | DISPOSITION CODES | |
|---|---|---|---|---|
| E - Evidence   K - Safekeeping<br>S - Stolen      F - Found<br>R - Recovered  L - Lost<br>O - Safety of Others | A - Automotive<br>E - Equipment/Tools<br>O - Office Equipment<br>S - Sports Equipment<br>Y - Other | B - Bicycle                    C - Camera<br>H - Household Appliances     M - Musical Instruments<br>P - Personal Accessories    R - Radio/Sound Devices<br>T - TV                       V - Viewing Equipment<br>D - Dollars/Money            K - Credit Cards | P - Property Room<br>R - Returned to Owner<br>O - Other | STOLEN: $<br><br>RECOVERED: $ |

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3S | E | Y | | | | | P |

ARTICLE
APPROX. 28.0 GRAMS OF OFF WHITE/YELLOWISH CHUNK LIKE SUBSTANCE.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3SS | E | Y | | | | | P |

ARTICLE
0.99 CENT STORE PLASTIC BAG.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3T | E | Y | | | | | P |

ARTICLE
PACKAGING MATERIAL FROM ITEM 3S.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3TT | E | Y | | | | | P |

ARTICLE
LARGE ZIPLOC CLEAR PLASTIC BAG.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3U | E | Y | | | | | P |

ARTICLE
MEDIUM SIZE ZIPLOC PLASTIC BAG.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3UU | E | Y | | | | | P |

ARTICLE
WHITE POWDERY RESIDUE FROM ITEM 3TT.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3V | E | Y | | | | | P |

ARTICLE
APPROX. 29.0 GRAMS OF WHITE POWDERY SUBSTANCE.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3VV | E | Y | | | | | P |

ARTICLE
PLASTIC PACKAGING MATERIAL COVERED WITH WHITE POWDERY RESIDUE.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3W | E | Y | | | | | P |

ARTICLE
PACKAGING MATERIAL FROM ITEM 3V.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3WW | E | Y | | | | | P |

ARTICLE
WHITE POWDERY RESIDUE COLLECTED FROM ITEM 3VV.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3X | E | Y | | | | | P |

ARTICLE
APPROX. 29.0 GRAMS OF WHITE POWDERY SUBSTANCE.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 3Y | E | Y | | | | | P |

ARTICLE
PACKAGING MATERIAL FROM ITEM 3X.

MT-016

| REPORTING OFFICER & I.D. #<br>GARTNER #0443 | BEAT<br>5 | DATE AND TIME WRITTEN<br>09/20/07 12:30 | SUPERVISOR APPROVING<br>0250  GARTNER | TYPIST<br>NG | DATE AND TIME REPORT TYPED  V 8.1.261<br>09/20/07 12:30 |
|---|---|---|---|---|---|

CONCORD POLICE DEPARTMENT

# OFFENSE REPORT

CR # ████████

PAGE 6

PROPERTY INVOLVEMENT CODES

**INVOLVEMENT CODES**
E - Evidence    K - Safekeeping
S - Stolen    F - Found
R - Recovered    L - Lost
O - Safety of Others

**CATEGORY CODES**
A - Automotive
E - Equipment/Tools
O - Office Equipment
S - Sports Equipment
Y - Other

B - Bicycle
H - Household Appliances
P - Personal Accessories
T - TV
D - Dollars/Money

C - Camera
M - Musical Instruments
R - Radio/Sound Devices
V - Viewing Equipment
K - Credit Cards

**DISPOSITION CODES**
P - Property Room
R - Returned to Owner
O - Other

**STOLEN: $**

**RECOVERED: $**

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|------|-----|-------|-------|----------|-------|-------|
| 3Z | E | Y | | | | | P |

ARTICLE
APPROX. 28.0 GRAMS OF WHITE POWDERY SUBSTANCE.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|------|-----|-------|-------|----------|-------|-------|
| 4 | E | P | | | | | P |

ARTICLE
BLACK BACKPACK.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|------|-----|-------|-------|----------|-------|-------|
| 4A | E | Y | | | | | P |

ARTICLE
BLACK GARBAGE BAG.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|------|-----|-------|-------|----------|-------|-------|
| 4B | E | Y | | | | | P |

ARTICLE
68 GREEN TABLETS WITHOUT ANY MARKINGS PACKAGED IN TIED OFF CLEAR PLASTIC BAG.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|------|-----|-------|-------|----------|-------|-------|
| 4C | E | Y | | | | | P |

ARTICLE
100 GREEN TABLETS WITHOUT ANY MARKINGS PACKAGED IN TIED OFF CLEAR PLASTIC BAG.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|------|-----|-------|-------|----------|-------|-------|
| 4D | E | Y | | | | | P |

ARTICLE
APPROX. 58.0 GRAMS OF A GREEN PLANT MATERIAL PACKAGED IN ZIPLOC BAG.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|------|-----|-------|-------|----------|-------|-------|
| 4E | E | Y | | | | | P |

ARTICLE
APPROX. 27.0 GRAMS OF A GREEN PLANT MATERIAL PACKAGED IN ZIPLOC BAG.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|------|-----|-------|-------|----------|-------|-------|
| 4F | E | Y | | | | | P |

ARTICLE
APPROX. 4.0 GRAMS OF A GREEN PLANT MATERIAL PACKAGED IN TIED OFF PLASTIC BAG.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|------|-----|-------|-------|----------|-------|-------|
| 4G | E | Y | | | | | P |

ARTICLE
PACKAGING MATERIAL.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|------|-----|-------|-------|----------|-------|-------|
| 4H | E | Y | | | | | P |

ARTICLE
DOLLAR TREE AND ALBERTSONS PLASTIC BAGS.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|------|-----|-------|-------|----------|-------|-------|
| 4I | E | Y | FISHER | MAX CAPACITY 300 GRAMS | | | P |

ARTICLE
LARGE WHITE AND SILVER DIGITAL SCALE.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|------|-----|-------|-------|----------|-------|-------|
| 4J | E | Y | | | | | P |

ARTICLE
PACKAGING MATERIAL.

MT-017

CONCORD POLICE DEPARTMENT

CR #

# OFFENSE REPORT

PAGE 7

PROPERTY INVOLVEMENT CODES

| INVOLVEMENT CODES | CATEGORY CODES | | DISPOSITION CODES |
|---|---|---|---|
| E - Evidence   K - Safekeeping | A - Automotive | B - Bicycle | C - Camera | P - Property Room |
| S - Stolen   F - Found | E - Equipment/Tools | H - Household Appliances | M - Musical Instruments | R - Returned to Owner |
| R - Recovered   L - Lost | O - Office Equipment | P - Personal Accessories | R - Radio/Sound Devices | O - Other |
| O - Safety of Others | S - Sports Equipment | T - TV | V - Viewing Equipment | |
| | Y - Other | D - Dollars/Money | K - Credit Cards | |

**STOLEN: $**

**RECOVERED: $**

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 4K | E | Y | | | | | P |
| ARTICLE | | | | | | | |
| PACKAGING MATERIAL. | | | | | | | |

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 4L | E | Y | | | | | P |
| ARTICLE | | | | | | | |
| OPEN TOP CLEAR PLASTIC BAG WITH WHITE RESIDUE. | | | | | | | |

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 5 | E | Y | | | | | P |
| ARTICLE | | | | | | | |
| APPROX. 4.0 GRAMS OF A GREEN PLANT SUBSTANCE PACKAGED IN TIED OFF CLEAR PLASTIC BAG. | | | | | | | |

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 6 | E | Y | SWANN/EDDIE BAUER | | | | P |
| ARTICLE | | | | | | | |
| SURVEILLANCE EQUIPMENT. | | | | | | | |

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 7 | E | Y | | | | | P |
| ARTICLE | | | | | | | |
| INDICIA IN THE FORM OF 5 LETTERS TO MASHAVU TIVON TURNER. | | | | | | | |

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 8 | E | Y | | | | | P |
| ARTICLE | | | | | | | |
| INDICIA IN THE FORM OF 3 PHOTOS OF MASHAVU TIVON TURNER. | | | | | | | |

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 9 | E | Y | | | | | P |
| ARTICLE | | | | | | | |
| 3 PHOTOS OF YOUNG CHILDREN AND BIRTHDAY CAKE. | | | | | | | |

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 10 | E | Y | | | | | P |
| ARTICLE | | | | | | | |
| PHOTO OF TWO YOUNG GIRLS SITTING ON STOOP. | | | | | | | |

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 11 | E | Y | | | | | P |
| ARTICLE | | | | | | | |
| INDICIA IN THE FORM OF 3 LETTERS TO MASHAVU TIVON TURNER. | | | | | | | |

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 12 | E | Y | | | | | P |
| ARTICLE | | | | | | | |
| INDICIA IN THE FORM OF A DMV LETTER TO MASHAVU TIVON TURNER. | | | | | | | |

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 13 | E | Y | | | | | P |
| ARTICLE | | | | | | | |
| INDICIA IN THE FORM OF 3 BILLS TO MASHAVU TIVON TURNER. | | | | | | | |

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|---|---|---|---|---|---|---|
| 14 | E | D | | | | $863.00 | F |
| ARTICLE | | | | | | | |
| UNITED STATES CURRENCY | | | | | | | |

MT-018

| REPORTING OFFICER & I.D. # | BEAT | DATE AND TIME WRITTEN | SUPERVISOR APPROVING | TYPIST | DATE AND TIME REPORT TYPED  V 8.1.261 |
|---|---|---|---|---|---|
| GARTNER #0443 | 5 | 09/20/07 12:30 | 0250 GARTNER | NG | 09/20/07 12:30 |

CONCORD POLICE DEPARTMENT

# OFFENSE REPORT

CR # 

PAGE 8

| PROPERTY INVOLVEMENT CODES | | | | | | | |

**INVOLVEMENT CODES**
E - Evidence   K - Safekeeping
S - Stolen   F - Found
R - Recovered   L - Lost
O - Safety of Others

**CATEGORY CODES**
A - Automotive
E - Equipment/Tools
O - Office Equipment
S - Sports Equipment
Y - Other

B - Bicycle
H - Household Appliances
P - Personal Accessories
T - TV
D - Dollars/Money

C - Camera
M - Musical Instruments
R - Radio/Sound Devices
V - Viewing Equipment
K - Credit Cards

**DISPOSITION CODES**
P - Property Room
R - Returned to Owner
O - Other

**STOLEN: $**

**RECOVERED: $**

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|------|-----|-------|-------|----------|-------|-------|
| 15 | E | Y | | | | | P |

ARTICLE

ZIG-ZAG PAPERS.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|------|-----|-------|-------|----------|-------|-------|
| 16 | E | Y | | | | | P |

ARTICLE

APPROX. 1.0 GRAMS OF A GREEN PLANT MATERIAL PACKAGED IN TIED OFF CLEAR PLASTIC BAG.

| # | INVL | CAT | BRAND | MODEL | SERIAL # | VALUE | DISPO |
|---|------|-----|-------|-------|----------|-------|-------|
| 17 | E | R | | | | | P |

ARTICLE

████████████████████████████████████

TOTAL PROPERTY VALUE
$863.00

NARRATIVE

Assisting Police Personnel:
Lt. Gartner
Detective Nielsen
Detective Spencer
Detective Flechsing
Officer Rodriguez
DEA SA Aiello
DEA SA Ua - ████████████

Narrative:
On 09/19/07 at 0820 hours, the Honorable Judge Arnason of the Contra Costa County Superior court signed a search warrant I authored for (A) Mashavu Tivon Turner, his residence located at ████████████████ and his 2001 Cadillac Deville with the California license plate ████████  The search warrant was the result of an on-going rock cocaine sales investigation in which Turner was the target of.

On 09/20/07 at approximately 1031 hours, assisting police personnel and I executed the search warrant as Turner arrived home ████████████ in his Cadillac. Turner was detained in handcuffs by Detective Spencer after he exited his Cadillac. Once Turner was detained, assisting police personnel approached ████████████ to execute the search warrant at Turner's residence. Detective Spencer remained outside with Turner.

Upon reaching the front door, I found the door locked. I knocked loudly on the front door and announced, "Concord Police Search Warrant, Demand Entry" two separate times. I did not receive any verbal response from within the apartment. I used a manual breaching tool to force open the locked front door. Approximately 30 seconds passed from the time of my first knock and announce to the time entry into the apartment was made. I was the first person inside the apartment. Lt Gartner, Detective Nielsen, Detective Flechsing and I conducted a protective sweep of the one bedroom apartment and we did not find anyone inside.

Once the apartment was secured, I had Officer Rodriguez and his K9 partner Caro enter the apartment to conduct a

MT-019

| REPORTING OFFICER & I.D # | BEAT | DATE AND TIME WRITTEN | SUPERVISOR APPROVING | TYPIST | DATE AND TIME REPORT TYPED  V 8 1.26° |
|---|---|---|---|---|---|
| GARTNER #0443 | 5 | 09/20/07 12:30 | 0250 GARTNER | NG | 09/20/07 12:30 |

CONCORD POLICE DEPARTMENT

CR #

# OFFENSE REPORT

NARRATIVE

sniff. Please see Officer Rodriguez' supplemental report for further.

CSI Mendenhall responded and took photos of the scene. Please see CSI Mendenhall's supplemental report for further.

A search of Turner's one bedroom apartment was conducted and yielded the following evidence items in the following areas:

TURNER'S BEDROOM CLOSET

Item 1. Armitron threat level IIIA body armor. Found by SA Ua.

TURNER'S KITCHEN AREA

Item 2. Silver and black US Magnum functioning digital scale with the max weight of 500g. Found on the left side of the kitchen table next to a microwave.

Item 3. Tan colored Glacier Gear shoulder cooler. This shoulder cooler was found zipped closed inside a turned over night stand on the floor of the kitchen. Inside this cooler were evidence items 3A-3WW.

Item 3A. Black plastic garbage bag containing evidence items 3B-3RR.

Item 3B. Large plastic Ziploc bag containing evidence items 3C-3T.

Item 3C. 29 grams (total packaged weight) of an off white chunk like substance found packaged in a tied off clear plastic bag. On 09/20/07 at 1450 hours, I conducted a presumptive test on a small sample of the off white chunk like substance via a narcopouch. The off white chunk like substance tested positive for the presence of cocaine base/salt and the narcopouch showed a positive color reaction. I requested this item be further analyzed by the Contra Costa County Drub Lab.

Item 3D. The clear plastic sandwich bag used to package item 3C. I submitted this item to the Concord Police CSI unit to be examined for latent finger prints.

Item 3E. 29 grams (total packaged weight) of an off white chunk like substance found packaged in a tied off clear plastic bag. I requested this item be further analyzed by the Contra Costa County Drug Lab.

Item 3F. The clear plastic sandwich bag used to package item 3E. I submitted this item to the Concord Police CSI unit to be examined for latent finger prints.

Item 3G. 29 grams (total packaged weight) of an off white chunk like substance found packaged in a tied off clear plastic bag. I requested this item be further analyzed by the Contra Costa County Drug Lab.

MT-020

| REPORTING OFFICER & I.D. # | BEAT | DATE AND TIME WRITTEN | SUPERVISOR APPROVING | TYPIST | DATE AND TIME REPORT TYPED  V 8.1.261 |
|---|---|---|---|---|---|
| GARTNER #0443 | 5 | 09/20/07  12:30 | 0250  GARTNER | NG | 09/20/07  12:30 |

CONCORD POLICE DEPARTMENT

CR #

# OFFENSE REPORT

PAGE 10

NARRATIVE

Item 3H. The clear plastic sandwich bag used to package item 3G. I submitted this item to the Concord Police CSI unit to be examined for latent finger prints.

Item 3I. 29 grams (total packaged weight) of an off white chunk like substance found packaged in a tied off clear plastic bag. I requested this item be further analyzed by the Contra Costa County Drug Lab.

Item 3J. The clear plastic sandwich bag used to package item 3I. I submitted this item to the Concord Police CSI unit to be examined for latent finger prints.

Item 3K. 29 grams (total packaged weight) of an off white chunk like substance found packaged in a tied off clear plastic bag. I requested this item be further analyzed by the Contra Costa County Drug Lab.

Item 3L. The clear plastic sandwich bag used to package item 3K. I submitted this item to the Concord Police CSI unit to be examined for latent finger prints.

Item 3M. 29 grams (total packaged weight) of an off white chunk like substance found packaged in a tied off clear plastic bag. I requested this item be further analyzed by the Contra Costa County Drug Lab.

Item 3N. The clear plastic sandwich bag used to package item 3M. I submitted this item to the Concord Police CSI unit to be examined for latent finger prints.

Item 3O. 29 grams (total packaged weight) of an off white chunk like substance found packaged in a tied off clear plastic bag. I requested this item be further analyzed by the Contra Costa County Drug Lab.

Item 3P. The clear plastic sandwich bag used to package item 3O. I submitted this item to the Concord Police CSI unit to be examined for latent finger prints.

Item 3Q. 29 grams (total packaged weight) of an off white chunk like substance found packaged in a tied off clear plastic bag. I requested this item be further analyzed by the Contra Costa County Drug Lab.

Item 3R. The clear plastic sandwich bag used to package item 3Q. I submitted this item to the Concord Police CSI unit to be examined for latent finger prints.

Item 3S. 28 grams (total packaged weight) of an off white chunk like substance found packaged in a tied off clear plastic bag. I requested this item be further analyzed by the Contra Costa County Drug Lab.

Item 3T. The clear plastic sandwich bag used to package item 3S. I submitted this item to the Concord Police CSI unit to be examined for latent finger prints.

The total weight of the suspected cocaine base detailed in evidence items 3C-3T is 260 grams. The 260 grams of suspected cocaine base were packaged in 9 separate plastic sandwich bags.

MT-021

| REPORTING OFFICER & I.D. # | BEAT | DATE AND TIME WRITTEN | SUPERVISOR APPROVING | TYPIST | DATE AND TIME REPORT TYPED   V 6 1.261 |
|---|---|---|---|---|---|
| GARTNER #0443 | 5 | 09/20/07  12:30 | 0250  GARTNER | NG | 09/20/07  12:30 |

NARRATIVE

Item 3U. Medium size Ziploc clear plastic bag containing evidence items 3V-3CC.

Item 3V. 29 grams (total packaged weight) of a white chunk/powdery substance found packaged in a tied off clear plastic bag. On 09/20/07 at 1545 hours, I conducted a presumptive test on a small sample of the white chunk/powdery substance via a narcopouch. The white chunk/powdery substance tested positive for the presence of cocaine base/salt and the narcopouch showed a positive color reaction. I requested this item be further analyzed by the Contra Costa County Drug Lab.

Item 3W. The clear plastic sandwich bag used to package item 3V. I submitted this item to the Concord Police CSI unit to be examined for latent finger prints.

Item 3X. 29 grams (total packaged weight) of a white chunk/powdery substance found packaged in a tied off clear plastic bag. I requested this item be further analyzed by the Contra Costa County Drug Lab.

Item 3Y. The clear plastic sandwich bag used to package item 3X. I submitted this item to the Concord Police CSI unit to be examined for latent finger prints.

Item 3Z. 28 grams (total packaged weight) of a white chunk/powdery substance found packaged in a tied off clear plastic bag. I requested this item be further analyzed by the Contra Costa County Drug Lab.

Item 3AA. The clear plastic sandwich bag used to package item 3Z. I submitted this item to the Concord Police CSI unit to be examined for latent finger prints.

Item 3BB. 4.0 grams (total packaged weight) of a white chunk/powdery substance found packaged in a tied off clear plastic bag. I requested this item be further analyzed by the Contra Costa County Drug Lab.

Item 3CC. The clear plastic sandwich bag used to package item 3BB. I submitted this item to the Concord Police CSI unit to be examined for latent finger prints.

The total weight of the suspected cocaine hcl detailed in evidence items 3V-3CC is 90 grams. The 90 grams of suspected cocaine hcl were packaged in 4 separate plastic bags.

Item 3DD. Clear Ziploc plastic bag containing evidence items 3EE-3RR.

Item 3EE. 29 grams (total packaged weight) a pinkish crystallized substance found packaged in a tied off clear plastic sandwich bag. On 09/20/07 at 1620 hours, I conducted a presumptive test on a small sample of the pinkish crystallized substance via a narcopouch. The pinkish crystallized substance tested positive for the presence of methamphetamine and the narcopouch showed a positive color reaction. I requested this item be further analyzed by the Contra Costa County Drug Lab.

Item 3FF. The clear plastic sandwich used to package item 3EE. I submitted this item to the Concord Police CSI unit to be examined for latent finger prints.

MT-022

| REPORTING OFFICER & I.D. # | BEAT | DATE AND TIME WRITTEN | SUPERVISOR APPROVING | TYPIST | DATE AND TIME REPORT TYPED  V.8.1.261 |
|---|---|---|---|---|---|
| GARTNER #0443 | 5 | 09/20/07 12:30 | 0250 GARTNER | NG | 09/20/07 12:30 |

CONCORD POLICE DEPARTMENT

CR #

## OFFENSE REPORT

PAGE 12

NARRATIVE

Item 3GG.  29 grams (total packaged weight) of a pinkish crystallized substance found packaged in a tied off clear plastic sandwich bag.  I requested this item be further analyzed by the Contra Costa County Drug Lab.

Item 3HH.  The clear plastic sandwich used to package item 3GG.  I submitted this item to the Concord Police CSI unit to be examined for latent finger prints.

Item 3II.  29 grams (total packaged weight) of a pinkish crystallized substance found packaged in a tied off clear plastic sandwich bag.  I requested this item be further analyzed by the Contra Costa County Drug Lab.

Item 3JJ.  The clear plastic sandwich used to package item 3II.  I submitted this item to the Concord Police CSI unit to be examined for latent finger prints.

Item 3KK.  29 grams (total packaged weight) of a pinkish crystallized substance found packaged in a tied off clear plastic sandwich bag.  I requested this item be further analyzed by the Contra Costa County Drug Lab.

Item 3LL.  The clear plastic sandwich used to package item 3KK.  I submitted this item to the Concord Police CSI unit to be examined for latent finger prints.

Item 3MM.  29 grams (total packaged weight) of a pinkish crystallized substance found packaged in a tied off clear plastic sandwich bag.  I requested this item be further analyzed by the Contra Costa County Drug Lab.

Item 3NN.  The clear plastic sandwich used to package item 3MM.  I submitted this item to the Concord Police CSI unit to be examined for latent finger prints.

Item 3OO.  29 grams (total packaged weight) of a pinkish crystallized substance found packaged in a tied off clear plastic sandwich bag.  I requested this item be further analyzed by the Contra Costa County Drug Lab.

Item 3PP.  The clear plastic sandwich used to package item 3OO.  I submitted this item to the Concord Police CSI unit to be examined for latent finger prints.

Item 3QQ.  29 grams (total packaged weight) of a pinkish crystallized substance found packaged in a tied off clear plastic sandwich bag.  I requested this item be further analyzed by the Contra Costa County Drug Lab.

Item 3RR.  The clear plastic sandwich used to package item 3QQ.  I submitted this item to the Concord Police CSI unit to be examined for latent finger prints.

The total weight of the suspected methamphetamine detailed in evidence items 3EE-3RR is 203 grams.  The 203 grams of suspected methamphetamine were packaged in 7 separate tied off clear plastic sandwich bags.

Item 3SS.  0.99 cent store plastic bag found at the bottom of the tan colored Glacier Gear shoulder bag.  Inside this plastic bag were evidence items 3TT-3WW.

MT-023

| REPORTING OFFICER & I.D. #<br>GARTNER #0443 | BEAT<br>5 | DATE AND TIME WRITTEN<br>09/20/07 12:30 | SUPERVISOR APPROVING<br>0250 GARTNER | TYPIST<br>NG | DATE AND TIME REPORT TYPED V 8.1.261<br>09/20/07 12:30 |

# OFFENSE REPORT

NARRATIVE

Item 3TT.  Large Ziploc clear plastic bag containing item 3UU-3WW.

Item 3UU.  White powdery substance collected from item 3TT.  I requested this item be further analyzed by the Contra Costa County Drug Lab.

Item 3VV.  Plastic packaging covered with white residue.

Item 3WW.  White powdery substance collected from item 3VV.  I requested this item be further analyzed by the Contra Costa County Drug Lab.

HALL CLOSET

Item 4.  Black backpack containing evidence items 4A-4L.

Item 4A.  Black garbage bag containing evidence items 4B-4G.

Item 4B.  68 green tablets packaged in a tied off plastic bag.  The tablets did not have any markings.  I conducted a presumptive test on a small sample of one of the green tablets via a narcopouch.  The green tablet tested positive for the presence of MDMA (ecstasy) and the narcopouch showed a positive color reaction.  I requested this item be further analyzed by the Contra Costa County Drug Lab.

Item 4C.  100 green tablets packaged in a tied off plastic bag.  The physical appearance and packaging of these tablets were consistent with evidence item 4B.  I requested this item be further analyzed by the Contra Costa County Drug Lab.

Item 4D.  58 grams (total packaged weight) of a green plant substance packaged inside a clear Ziploc sandwich bag.  The 58 grams were packaged in two separate clear plastic sandwich baggies. Each baggie of the green plant material weighed 29 grams.  I requested this item be further analyzed by the Contra Costa County Drug Lab.

Item 4E.  27 grams of a green plant substance packaged in a clear Ziploc sandwich bag.  This sandwich bag contained 6 individually packages of a green plant material weighing 5 grams each.  The 6th package weighed 2 grams (total packaged weight).  I requested this item be further analyzed by the Contra Costa County Drug Lab.

Item 4F.  4 grams (total packaged weight) of a green plant material packaged in a tied off plastic bag.  I requested this item be further analyzed by the Contra Costa County Drug Lab.

Item 4G.  Red Apple "125125" brand Ziploc bag containing 86 empty "dime size" Ziploc baggies with a devil face design.

Item 4H.  Dollar tree discount store and Albertson's plastic bags containing evidence items 4I-4L.

Item 4I.  White and silver functional Fisher brand digital scale with the max capacity of 300 grams.

| REPORTING OFFICER & I.D. # | BEAT | DATE AND TIME WRITTEN | SUPERVISOR APPROVING | TYPIST | DATE AND TIME REPORT TYPED  V 6 1.261 |
|---|---|---|---|---|---|
| GARTNER #0443 | 5 | 09/20/07  12:30 | 0250  GARTNER | NG | 09/20/07  12:30 |

# OFFENSE REPORT

NARRATIVE

Item 4J.  Red Apple "125125" brand Ziploc bag containing 100 empty "dime size" Ziploc baggies with a devil face design.

Item 4K.  Clear Ziploc bag containing 95 smaller clear Ziploc bags.  These baggies were slightly larger than the baggies detailed in evidence items 4G and 4J.

Item 4L.  Open top sandwich bag containing white residue.  There was not enough residue to collect and test for the presence of a controlled substance.

TURNER'S BEDROOM

Item 5.  4 grams of a green plant substance packaged in a tied off plastic bag.  Found inside the left drawer of Turner's headboard.  I conducted a presumptive test on a small sample of the green plant substance via a narcopouch.  The green plant substance tested positive for the presence of THC and the narcopouch showed a positive color reaction.  I requested this item be further analyzed by the Contra Costa County Drug Lab.

LIVING ROOM/KITCHEN AREA

Item 6.  Surveillance equipment consisting of Eddie Bauer audiovox monitor, Swann Night Hawk camera, Swann receiver and power cords.  Monitor was set on kitchen table with one surveillance camera posted in the front window of the apartment.

TURNER'S BEDROOM

Item 7.  5 pieces of indicia in Turner's name found on the television in Turner's bedroom.  Indicia consisted of Child Support Services letter, City of Concord tow form (case 07-7428), Department of Motor Vehicles transfer notice and 2 notices regarding the sale of a Dodge Ram truck.  Indicia found by SA Aiello.

HALL CLOSET

Item 8.  3 photos containing Turner.

Item 9.  3 photos containing young children and a birthday cake.

LIVING ROOM

Item 10.  Photo of 2 young girls sitting on a stoop.  Found in small blue photo album on the left side of the couch on the floor.  Found by Det. Flechsing.

Item 11.  3 letters from the Employment Development Department of California addressed to Turner at ████████  ████████  These items of indicia were located on the living room table.

MT-025

| REPORTING OFFICER & I.D. # | BEAT | DATE AND TIME WRITTEN | SUPERVISOR APPROVING | TYPIST | DATE AND TIME REPORT TYPED  V 8.1 26.1 |
|---|---|---|---|---|---|
| GARTNER #0443 | 5 | 09/20/07  12:30 | 0250  GARTNER | NG | 09/20/07  12:30 |

CONCORD POLICE DEPARTMENT

CR # 

# OFFENSE REPORT

PAGE 15

NARRATIVE

Item 12. Letter from the Department of Motor Vehicles informing Turner that his driving privledge had been suspended on 01/14/07. The letter was addressed to Turner at ████████████ and was found on the floor of the living room near the living room table.

KITCHEN AREA

Item 13. 1 Sprint bill, 1 PG&E bill and 1 Fresno Credit Bureau bill, all addressed to Turner at ████████ ████████ Found on top of microwave on kitchen table.

TURNER'S PERSON

Item 14. $863.00 found in Turner's right front pants pocket. This money was asset seized and later transferred to the City of Concord Finance Department per Health and Safety Code Section 11471/11488.

Item 15. Pack of Zig-Zag papers. Found in Turner's left front pants pocket along with item 16.

Item 16. 1 gram (total packaged weight) of a green plant material packaged in tied off clear plastic baggie. This item was found in Turner's left front pants pocket along with evidence item 15. The physical appearance and smell of this item was consistent with item 5. I requested this item to be further analyzed by the Contra Costa County Drug Lab.

At approximately 1045 hours, I advised Turner he was under arrest for possession of controlled substances for sale. At approximately 1059 hours, Officer Carroll arrived on scene, took custody of Turner and transported Turner to the Concord Police jail for booking. Turner's Cadillac was also towed to the Concord Police parking lot under the supervision of Detective Spencer for California Vehicle Code Section 22651(h).

In addition to evidence items 1-16, I located a large quantity of explosive materials boxed in Turner's kitchen. I collected all the explosive materials along with evidence items 1-16. I left a copy of the search warrant, search warrant return and receipt on Turner's kitchen table. I secured Turner's front door by locking the deadbolt with a key on his key chain. I then drove to the Concord Police Department.



On 09/24/07 I logged evidence items 1-17 into the Concord Police Property Room.

On 09/25/07 at approximately 1300 hours, I met with Sgt. Mclaughlin from the Walnut Creek Police Department.

MT-026

| REPORTING OFFICER & I.D. # | BEAT | DATE AND TIME WRITTEN | SUPERVISOR APPROVING | TYPIST | DATE AND TIME REPORT TYPED  V 8.1.26 |
|---|---|---|---|---|---|
| GARTNER #0443 | 5 | 09/20/07 12:30 | 0250 GARTNER | NG | 09/20/07 12:30 |

CONCORD POLICE DEPARTMENT

CR # 07-21498

# OFFENSE REPORT

PAGE 16

NARRATIVE

Sgt. Mclaughlin is the Team Leader for the Walnut Creek Police Bomb Squad. I met with Sgt. Mclaughlin at the Walnut Creek Police Range so he could evaluate the explosive material I had seized from Turner's apartment. The explosive materials Sgt. Mclaughlin was the most concerned with were the following:

Super 8 Rockets, 6 boxes containing 12 rockets per box.
1 inch mortar balls, 4 boxes containing 6 mortars per box.
2 inch mortar balls, total quantity of 16.
3 inch mortar balls, total quantity of 9.
Bee's Rockets, 19 packages containing 6 rockets per package.
Flashing Thunder 8 Ball Roman Candles, total quantity of 6.
Starlight Candles, 3 packages containing 4 candles per package.
1 3/4 inch Artillery Rockets, total quantity of 4 rockets.
4 inch large rockets, total quantity of 5 rockets.

Sgt. Mclaughlin removed the explosive filler from all of the 3 inch mortar balls. The net weight of the explosive material removed from just the 3 inch mortar balls was approximately 1392 grams. Per Health and Safety Code Section 12702(c), anyone who possesses 7,500 or more grains (7,500 grains = 486 grams) of explosive material is guilty of a public offense punishable in county jail or prison. The amount of explosive material found in just the 3 inch mortar balls was more than twice the weight outlined in Health and Safety Code Section 12702(c).

Sgt. Mclaughlin took a small sample of the explosive material removed from the 3 inch mortar balls and conducted a burn test. The burn test was positive. The explosive material collected from the 3 inch mortar balls remained in Sgt. Mclaughlin's custody. Sgt. Mclaughlin also took custody of the explosive materials detailed in this investigation so they could be destroyed. Sgt. Mclaughlin's assistance with this investigation is documented under Walnut Creek Police Case Number 07-22997.

On 09/25/07 at approximately 1800 hous, I took the remaining assortment of ground fireworks to Firestation 1 in Walnut Creek and providing them to Fire Personnel for destruction.

In summary, I collected approximately 260 grams of suspected cocaine base, approximately 90 grams of suspected cocaine hcl, approximately 203 grams of suspected methamphetamine, 168 suspected pills of ecstasy and approximately 94 grams of suspected marijuana from Turner's residence. In addition to these controlled substances, I collected packaging material, ballistic body armor, a surveillance system, scales and United States currency in the sum of $863.00.

Based upon my training and experience, it is my professional opinion that the mere weights of the suspected controlled substances found in Turner's residence proves that Turner possessed these substances with the intent to sell. My opinion is further supported with the packaging material, scales, surveillance system and cash collected which in my professional opinion are commonly used to facilitate the sale of controlled substances.

Per the Department of Motor Vehicle, Turner's driver license was suspended on 09/20/07 and Turner was seen driving by Detective Nielsen. Per the Contra Costa County Probation database, Turner is on active probation for VC

MT-027

## OFFENSE REPORT

**NARRATIVE**

23152 (DUI) through 10/04/10.

Case pending lab results

| REPORTING OFFICER & I.D. # | BEAT | DATE AND TIME WRITTEN | SUPERVISOR APPROVING | TYPIST | DATE AND TIME REPORT TYPED  V 8.1.261 |
|---|---|---|---|---|---|
| GARTNER #0443 | 5 | 09/20/07  12:30 | 0250  GARTNER | NG | 09/20/07  12:30 |

# EXHIBIT C



| | |
|---|---|
| **VeriPic** | VeriPic (R) Digital Photo Lab [www.VeriPic.com] |

| Media Title | |
|---|---|
| Case, Claim or File Number | |
| Photographer | Nicole Mendenhall |
| Authentication Result | Passed (Security begins at: Download. Authentication Strength: 256 Bits) |
| Camera Model | Konica Minolta Dimage A1 |
| Camera Clock | 09/20/2007 11:01:46 AM Pacific Daylight Time |
| Media Import Time (Authentic) | 09/20/2007 02:31:48 PM Pacific Daylight Time (Time of Importing) |
| Media File | PICT0013.JPG |
| Magnification | 152 % of available space |
| Origin (X Pixels, Y Pixels) | (0 Pixels, 207 Pixels) |
| Crop Information | Photo Cropped |
| Printer Note | |
| Resolution (X Pixels, Y Pixels) | (1600 Pixels Wide, 1200 Pixels High) |
| Viewing Parameters | Brightness: 100, Contrast: 100, Color: 100, Red Strength: 100, Green Strength: 100, Blue Strength: 100 |
| Background Removal Filters | Filters are not being used. |



| | |
|---|---|
| **VeriPic** | VeriPic (R) Digital Photo Lab [www.VeriPic.com] |

| Media Title | |
|---|---|
| Case, Claim or File Number | |
| Photographer | Nicole Mendenhall |
| Authentication Result | Passed (Security begins at: Download. Authentication Strength: 256 Bits) |
| Camera Model | Konica Minolta Dimage A1 |
| Camera Clock | 09/20/2007 11:02:13 AM Pacific Daylight Time |
| Media Import Time (Authentic) | 09/20/2007 02:31:48 PM Pacific Daylight Time (Time of Importing) |
| Media File | PICT0014.JPG |
| Magnification | 152 % of available space |
| Origin (X Pixels, Y Pixels) | (0 Pixels, 207 Pixels) |
| Crop Information | Photo Cropped |
| Printer Note | |
| Resolution (X Pixels, Y Pixels) | (1600 Pixels Wide, 1200 Pixels High) |
| Viewing Parameters | Brightness: 100, Contrast: 100, Color: 100, Red Strength: 100, Green Strength: 100, Blue Strength: 100 |
| Background Removal Filters | Filters are not being used. |

MT-037

Gartner 07-21498



VeriPic (R) Digital Photo Lab [www.VeriPic.com]

| | |
|---|---|
| Media Title | |
| Case, Claim or File Number | |
| Photographer | Nicole Mendenhall |
| Authentication Result | Passed (Security begins at: Download, Authentication Strength: 256 Bits) |
| Camera Model | Konica Minolta Dimage A1 |
| Camera Clock | 09/20/2007 11:11:04 AM Pacific Daylight Time |
| Media Import Time (Authentic) | 09/20/2007 02:33:21 PM Pacific Daylight Time (Time of Importing) |
| Media File | PICT0033.JPG |
| Magnification | 152 % of available space |
| Origin (X Pixels, Y Pixels) | (0 Pixels, 207 Pixels) |
| Crop Information | Photo Cropped |
| Printer Note | |
| Resolution (X Pixels, Y Pixels) | (1600 Pixels Wide, 1200 Pixels High) |
| Viewing Parameters | Brightness: 100, Contrast: 100, Color: 100, Red Strength: 100, Green Strength: 100, Blue Strength: 100 |
| Background Removal Filters | Filters are not being used. |



VeriPic (R) Digital Photo Lab [www.VeriPic.com]

| | |
|---|---|
| Media Title | |
| Case, Claim or File Number | |
| Photographer | Nicole Mendenhall |
| Authentication Result | Passed (Security begins at: Download, Authentication Strength: 256 Bits) |
| Camera Model | Konica Minolta Dimage A1 |
| Camera Clock | 09/20/2007 11:11:10 AM Pacific Daylight Time |
| Media Import Time (Authentic) | 09/20/2007 02:33:21 PM Pacific Daylight Time (Time of Importing) |
| Media File | PICT0034.JPG |
| Magnification | 152 % of available space |
| Origin (X Pixels, Y Pixels) | (0 Pixels, 207 Pixels) |
| Crop Information | Photo Cropped |
| Printer Note | |
| Resolution (X Pixels, Y Pixels) | (1600 Pixels Wide, 1200 Pixels High) |
| Viewing Parameters | Brightness: 100, Contrast: 100, Color: 100, Red Strength: 100, Green Strength: 100, Blue Strength: 100 |
| Background Removal Filters | Filters are not being used. |

MT-047

# EXHIBIT D

Gartner 07-21498



VeriPic (R) Digital Photo Lab [www.VeriPic.com]

Media Title

Case, Claim or File Number
Photographer                    Nicole Mendenhall
Authentication Result           Passed (Security begins at: Download, Authentication Strength: 256 Bits)
Camera Model                    Konica Minolta Dimage A1
Camera Clock                    09/20/2007 11:10:07 AM Pacific Daylight Time
Media Import Time (Authentic)   09/20/2007 02:32:50 PM Pacific Daylight Time (Time of Importing)
Media File                      PICT0031.JPG
Magnification                   152 % of available space
Origin (X Pixels, Y Pixels)     (0 Pixels, 207 Pixels)
Crop Information                Photo Cropped
Printer Note
Resolution (X Pixels, Y Pixels) (1600 Pixels Wide, 1200 Pixels High)
Viewing Parameters             Brightness: 100, Contrast: 100, Color: 100, Red Strength: 100, Green Strength: 100, Blue Strength: 100
Background Removal Filters      Filters are not being used



VeriPic (R) Digital Photo Lab [www.VeriPic.com]

Media Title

Case, Claim or File Number
Photographer                    Nicole Mendenhall
Authentication Result           Passed (Security begins at: Download, Authentication Strength: 256 Bits)
Camera Model                    Konica Minolta Dimage A1
Camera Clock                    09/20/2007 11:10:55 AM Pacific Daylight Time
Media Import Time (Authentic)   09/20/2007 02:32:50 PM Pacific Daylight Time (Time of Importing)
Media File                      PICT0032.JPG
Magnification                   152 % of available space
Origin (X Pixels, Y Pixels)     (0 Pixels, 207 Pixels)
Crop Information                Photo Cropped
Printer Note
Resolution (X Pixels, Y Pixels) (1600 Pixels Wide, 1200 Pixels High)
Viewing Parameters             Brightness: 100, Contrast: 100, Color: 100, Red Strength: 100, Green Strength: 100, Blue Strength: 100
Background Removal Filters      Filters are not being used.

MT-046

# EXHIBIT E

Gartner 07-21498



| | |
|---|---|
| VeriPic (R) Digital Photo Lab [www.VeriPic.com] | |
| Media Title | |
| Case, Claim or File Number | |
| Photographer | Clarivel Avila |
| Authentication Result | Secured Media (Security begins at: User Applied, Authentication Strength: 128 Bits) |
| Camera Model | Secure only (non-VeriPic devices) |
| Camera Clock | Unavailable |
| Media Import Time (Authentic) | 09/25/2007 05:35:34 PM Pacific Daylight Time (Time of Securing) |
| Media File | P1010014.JPG |
| Magnification | 152 % of available space |
| Origin (X Pixels, Y Pixels) | (0 Pixels, 265 Pixels) |
| Crop Information | Photo Cropped |
| Printer Note | |
| Resolution (X Pixels, Y Pixels) | (2048 Pixels Wide, 1536 Pixels High) |
| Viewing Parameters | Brightness: 100, Contrast: 100, Color: 100, Red Strength: 100, Green Strength: 100, Blue Strength: 100 |
| Background Removal Filters | Filters are not being used. |



| | |
|---|---|
| VeriPic (R) Digital Photo Lab [www.VeriPic.com] | |
| Media Title | |
| Case, Claim or File Number | |
| Photographer | Clarivel Avila |
| Authentication Result | Secured Media (Security begins at: User Applied, Authentication Strength: 128 Bits) |
| Camera Model | Secure only (non-VeriPic devices) |
| Camera Clock | Unavailable |
| Media Import Time (Authentic) | 09/25/2007 05:35:54 PM Pacific Daylight Time (Time of Securing) |
| Media File | P1010015.JPG |
| Magnification | 152 % of available space |
| Origin (X Pixels, Y Pixels) | (0 Pixels, 265 Pixels) |
| Crop Information | Photo Cropped |
| Printer Note | |
| Resolution (X Pixels, Y Pixels) | (2048 Pixels Wide, 1536 Pixels High) |
| Viewing Parameters | Brightness: 100, Contrast: 100, Color: 100, Red Strength: 100, Green Strength: 100, Blue Strength: 100 |
| Background Removal Filters | Filters are not being used. |

MT-064

1 | JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

2

3 | BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

4 | JAMES C. MANN (CABN 221603)
Assistant United States Attorney

5

6 | 1301 Clay Street, Suite 340-S
Oakland, California 94612

7 | Telephone: (510) 637-3705
Facsimile:  (510) 637-3724
E-Mail:      James.C.Mann@usdoj.gov

8

9 | Attorneys for Plaintiff

10 | UNITED STATES DISTRICT COURT

11 | NORTHERN DISTRICT OF CALIFORNIA

12 | OAKLAND DIVISION

13 | UNITED STATES OF AMERICA,      )     No. CR 08-00044 DLJ
                                )
14 |      Plaintiff,              )
                                )     **EXHIBIT F**
15 | v.                           )
                                )
16 | MASHAVU T. TURNER,           )
                                )
17 |      Defendant.              )
_____ )

18

19 | **MANUAL FILING NOTIFICATION**

20

21 | Regarding: EXHIBIT F to the GOVERNMENT'S APPEAL OF PRE-TRIAL RELEASE

22 | ORDER FOR DEFENDANT MASHAVU T. TURNER

23 |      This filing is in paper or physical form only, and is being maintained in the case

24 | file in the Clerk's office.   If you are a participant on this case, this filing will be served in

25 | hard-copy shortly.  For information on retrieving this filing directly from the court, please

26 | see the court's main web site at http://www.cand.uscourts.gov under Frequently Asked

27 | Questions (FAQ).

28 | ////

MANUAL FILING NOTIFICATION - EXHIBIT F

1    This filing was not e-filed for the following reasons:

2    PHYSICAL OBJECT (description): CD, marked as Exhibit F.

3

4    DATED: March 3, 2008                    Respectfully submitted,

5                                            JOSEPH P. RUSSONEILLO
                                             United States Attorney
6

7

8                                            JAMES C. MANN
                                             Assistant United States Attorney
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

<u>UNITED STATES vs. MASHAVU T. TURNER</u>

CR-08-0044 DLJ

I, Katie Turner, declare that I am a citizen of the United States, over the age of 18 years and not a party of the within action.

I hereby certify that a copy of the foregoing:

**EXHIBIT F - CD - MANUAL FILING NOTIFICATION**

was mailed to the named party(ies) listed below:

SHAWN HALBERT
Assistant Federal Public Defender
Office of the Federal Public Defender
555 - 12th Str., Suite 650
Oakland, CA 94607-3627

I declare under penalty of perjury that the foregoing is true and correct, and that this certificate was executed at Oakland, California.

DATED: March 3, 2008.

KATIE TURNER
Supervisory Legal Assistant
United States Attorney's Office
Oakland Branch

MANUAL FILING NOTIFICATION - EXHIBIT F