BARRY J. PORTMAN
Federal Public Defender
SHAWN HALBERT
Assistant Federal Public Defender
555 12th Street, Suite 650
Oakland, California 94607-3627
Telephone (510) 637-3500
Shawn_Halbert@fd.org

Counsel for Defendant TURNER

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 08-0044 DLJ |
| Plaintiff, | DEFENDANT'S RESPONSE TO GOVERNMENT'S APPEAL OF PRETRIAL RELEASE ORDER FOR MASHAVU TURNER |
| vs. | |
| MASHAVU T. TURNER, | Date: March 12, 2008 |
| Defendant. | Time: 10:00 a.m. |
| | Court: Honorable D. Lowell Jensen |

**INTRODUCTION**

Mashavu Turner's case is no different than the tens or hundreds of drug cases in which defendants have been released pre-trial by Magistrate Judge Brazil and other magistrate judges. The only wrinkle to the case involves the matter that the parties are discussing under seal, and as the defense can expound upon more fully at the hearing, that matter does not make Mr. Turner a flight risk or a danger to the community – if anything, the contrary.

Mr. Turner has a very limited criminal record and there is no allegation that he was engaged in any violence (or that he even possessed a firearm) in connection with the charged offense. The

DEF'S RESPONSE TO GOV'S APPEAL OF      - 1 -
RELEASE ORDER; No. CR 08-0044 DLJ

condition imposed by Judge Brazil that Mr. Turner remain at the halfway house on essentially a twenty-four hour curfew eliminates the possibility that he could be a "danger to the community" by selling drugs. With respect to whether he will make his court appearances or will flee California forever, there should be no dispute. Everything and everyone he has known and loved in his life – including his two children – are in the Bay Area, and he has no reason or incentive to flee for the rest of his long life, even if he had anywhere else to go, which he does not.

To the extent that there are unresolved factual issues, this Court should remand the case to Judge Brazil, as the government is now raising facts that it declined to more fully litigate before Judge Brazil, such as whether Mr. Turner has a close relationship with his daughters such that he has a strong incentive not to flee for the rest of his life (which is misconstrued in the government's brief as whether it was safe for the children to live with Mr. Turner), the innocent reason that Mr. Turner had a surveillance camera at his apartment (with his landlord's permission, to detect persons breaking into cars on the street outside his apartment building), and his possession of a and old and out-of-date piece of armor vest that belonged to his brother many years ago.  These issues are raised in the government's brief as suggestions of nefarious activity, but the government declined to create any kind of record on these issues before Judge Brazil at the original bail hearing.

**DISCUSSION**

The defense does not dispute that the government has presented evidence that Mr. Turner was selling narcotics. But the defense does dispute that Mr. Turner was a "high-level" dealer. The amount of narcotics he possessed could fit in a grocery bag, and the $3,000 referenced by the government is not the kind of money possessed by a "high-end" dealer. Mr. Turner, who helps to financially support his two children, lived in a small apartment and possessed nothing indicating that he had made any substantial money from whatever drug sales he may have done. The defense proffers that Mr. Turner has not been in the drug selling business for very long, a fact that should be known to the government through its cooperator. The "surveillance" techniques described in the

DEF'S RESPONSE TO GOV'S APPEAL OF         - 2 -
RELEASE ORDER; No. CR 08-0044 DLJ

government's memorandum were nothing sophisticated and, assuming the parties are talking about the same incident, involved Mr. Turner's calling his daughter's mother in relation to their daughter's cheerleading practice because Mr. Turner was worried that someone was following him. The arrest of Mr. Turner that followed this surveillance recovered no narcotics.

When Mr. Turner is compared to other defendants charged with drug dealing in federal court, many of whom are released, there are two important differences.

- First, he did not possess a firearm, and the government has produced no evidence whatsoever that Mr. Turner ever used or threatened violence in connection with the sales of drugs. As the government has a confidential informant, it can easily confirm that Mr. Turner was never seen in possession of a firearm. Thus, all suggestions that he is someone who could "resort to violence" are speculative and have nothing to do with Mr. Turner as an individual.

- Second, Mr. Turner has a very limited criminal history. He has only one felony conviction, which was for drug *possession* fourteen years ago. He has a single misdemeanor conviction, for a DUI in 2006, for which he had dutifully attended classes and met his obligations for the past eighteen months, including the past several months when he was avoiding Agent Gartner.

With respect to the amount of time that Mr. Turner faces if convicted, as the defense proffered at the bail hearing before Judge Brazil, Mr. Turner has every incentive *not* to flee if he is released from custody. The government has not filed his prior conviction raising the mandatory minimum sentence from ten years to twenty years, but if Mr. Turner flees, the government certainly will file the conviction, which makes it extremely unlikely that Mr. Turner will flee. Mr. Turner's entire life – his children, his girlfriend, his mother, his uncle, and all of his other family – are all in the Bay Area. He has a long life ahead of him and places great value in each year of his children's lives. It would be highly irrational and utterly self-destructive for him to flee and double the mandatory sentence that he faces.

DEF'S RESPONSE TO GOV'S APPEAL OF                - 3 -
RELEASE ORDER; No. CR 08-0044 DLJ

1  With respect to the sureties, Mr. Turner has three individuals who all stand to suffer severe
2  financial consequences if he flees – his mother, his uncle, and his girlfriend, all of whom are
3  employed. Regarding his uncle, Craig Dowell, who has now signed the bond, his delay in signing
4  was no reflection on his support for his nephew. As was evident in open court, Mr. Dowell was not
5  present at the bail hearing, which was held at an earlier date than undersigned counsel anticipated.
6  Mr. Dowell was thus given less than twenty-four hours notice of the date on which to sign the bond,
7  and was not available that day due to a conflict with his work schedule. As Magistrate Judge Brazil
8  was not on the bench the week of March 3, 2008, Mr. Dowell signed on the earliest date on which
9  Judge Brazil and undersigned counsel were both available to appear in court after the original date
10 was set.

11  Finally, the government raises the issues of Mr. Turner's occasional use of marijuana and
12 less frequent use of ecstasy, and his imperfect employment record. It may have been these factors,
13 in part, that led Judge Brazil to order that Mr. Turner be confined to the halfway house, permitted to
14 leave for very limited reasons, not including employment. Mr. Turner was completely forthright
15 about his drug use and answered Judge Brazil's questions in open court. The way to address this
16 relatively minor drug use is, if anything, to require the additional condition of drug counseling.
17 Since Mr. Turner will not be permitted to leave the halfway house for employment, the fact that he
18 may have some trouble finding a good job is irrelevant. Similarly, the government's apparent
19 concern that Mr. Turner will be a danger to the community in that he could conceivably commit the
20 same crime with which he is charged, again, is addressed by the fact that he will be on a twenty-four
21 hour curfew at the halfway house.

## CONCLUSION

23  The strict conditions of release fashioned by Judge Brazil, in combination with the $250,000
24 bond signed by three employed individuals, should more than adequately provide this Court with
25 assurance that Mr. Turner will not deal drugs and will not flee the Bay Area such that he does not

DEF'S RESPONSE TO GOV'S APPEAL OF        - 4 -
RELEASE ORDER; No. CR 08-0044 DLJ

1  appear for future court appearances.

3  Dated: March 11, 2008

                                      Respectfully submitted,

                                      BARRY J. PORTMAN
                                      Federal Public Defender

                                                  /S/

                                      SHAWN HALBERT
                                      Assistant Federal Public Defender

DEF'S RESPONSE TO GOV'S APPEAL OF     - 5 -
RELEASE ORDER; No. CR 08-0044 DLJ