BARRY J. PORTMAN
Federal Public Defender
NED SMOCK
Assistant Federal Public Defender
555 - 12th Street
Suite 650
Oakland, CA 94607-3627
Telephone: (510) 637-3500

Counsel for Defendant MASHAVU TURNER

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR-08-0044 DLJ |
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| vs. | Date:  September 5, 2008 |
| MASHAVU TURNER, | |
| Defendant. | |

**I.      Introduction**

Mashavu Turner will be before the Court for judgment and sentencing on Friday, September 5, 2008. Pursuant to a negotiated plea agreement, both parties are recommending the mandatory minimum sentence of ten years. United States Probation has joined in this recommendation. The defense submits this memorandum to provide background information about Mr. Turner and to assert its objections to portions of the Presentence Investigation Report.

**II.     Mashavu Turner Has Been a Hard-Working, Loving Father**

Mr. Turner did a commendable job as the sole caregiver for his daughter, Mashanique Turner, who is now 13 years old. Mashanique has lived with Mr. Turner since the age of two after she was taken from her mother. Mashanique's social worker, Dajenya

Def's Sentencing Memo                                        1

Kafele, writes in a letter to the court that:

> My observations indicate that Mr. Turner was doing a very good job as a father, as his friendly, respectful, intelligent and well-behaved daughter appears to possess a good degree of self-esteem despite some of the traumatic experiences she had while not in his care. It is undeniable that she is very attached to her father and misses him greatly. My observations of the two of them together make clear that Mr. Turner is a very caring and sensitive father, and he and his daughter love each other very much.

Mr. Turner's friend, Aliyah Heinze-Giardello, writes that Mr. Turner "has always been a dedicated family man," and that he often arranged sleepovers for his daughters, his nieces, and his nephew, and that the family convened for dinner on Sundays. Ms. Heinze-Giardello reports that Mashanique has received academic honors from her school for the past several years and that Mr. Turner has taught her to maintain a positive attitude. Mr. Turner's wife, Jovana Lalusic, writes that Mr. Turner always made sure Mashanique did her homework, drove her to her after school activities, and cooked for her. Mashanique's successes despite the fact that she was abandoned by her mother and abused by her step-uncle are a tremendous tribute to Mr. Turner.

     Mr. Turner spent most of the last decade working steadily to support his daughter. Mr. Turner has only two convictions within the relevant time period for the purposes of criminal history calculation under the advisory guidelines. Both of those convictions are for misdemeanor drunk driving charges. Mr. Turner is treated as Criminal History Category III because at the time of his arrest he was on probation for the second DUI charge. Were it not for that charge and the term of probation associated with it, Mr. Turner would have been eligible for safety valve treatment and would have been in an advisory guideline range of 70 to 87 months.

     In his letter to the Court, Mr. Turner describes working in a long-term job he loved for a semiconductor company called G.A. Wirth in Walnut Creek. Mr. Turner worked for G.A. Wirth for seven years. He and his daughter moved into a two-bedroom apartment during this time, and Mr. Turner describes being extremely proud because everyone in his

family looked up to him. Unfortunately, he was laid off in 2003. Mr. Turner moved between jobs over the next four years, but a combination of factors left Mr. Turner in an extreme financial bind. Mr. Turner made a very bad decision to involve himself in drugs as a way to pull himself out of these financial problems. It was a mistake he will regret for the rest of his life. Mr. Turner writes that even though he was motivated by the misguided desire to help his daughter, "I feel so horrible for putting not only myself but my kids, wife, and family through this whole ordeal. It's been the worst mistake I could ever make in my life. I've let my wife and kids down and now we're paying the ultimate price."

A sentence of ten years in prison is an extremely harsh punishment under the circumstances. The defense sought to negotiate a disposition in this matter that would have resulted in a sentence of less than ten years. The government was unwilling to offer less than ten years, and instead threatened to file papers alleging a prior drug felony under 21 U.S.C. § 851 raising the mandatory minimum to twenty years unless Mr. Turner pled guilty and agreed to go into custody at the county jail at the time of his entry of plea.[1] Mr. Turner had been held at the Cornell Corrections halfway house, from which he was allowed to visit his children occasionally and attend court hearings for his daughter.

### III. Defendant's Objections to Paragraphs 36-40 and 59 of Presentence Investigation Report

The defense strongly objects to inclusion in the Presentence Investigation Report of the allegations contained in paragraphs 36 through 39 of the Presentence Investigation Report which describe what seem to be two separate incidents occurring on April 6, 1996.[2] There are several problems with these paragraphs. First, it is not at all clear that Mr. Turner was the person who allegedly assaulted the woman described in the report. Indeed, the police report upon which United States Probation relies as a basis for these paragraphs does

---

[1] The prior conviction occurred in 1994, when Mr. Turner was 19 years old.

[2] The defense filed informal objections asking that these paragraphs be stricken.

Def's Sentencing Memo                         3

not name Mashavu Turner at all.  Instead, Mr. Turner's brother Markeaus Turner was the alleged perpetrator.[3]  Paragraph 36 of the Presentence Investigation Report describes a dramatic incident in which Mr. Turner's brother is alleged to have assaulted a woman.  Unless one reads the report carefully, the references to "Turner" in that paragraph could suggest that *Mashavu* Turner is the person alleged to have perpetrated that assault.  Adding to the confusion, paragraph 37 refers to "Turner," apparently in reference to Mashavu Turner rather than his brother.  In the absence of meaningful evidence connecting Mashavu Turner to the incident, there is absolutely no reason to reference it in the report.

       The probation report goes on to suggest that, even though Mashavu Turner is not named in the police report, he was likely involved in the incident because his rap sheet shows an arrest by the same agency on the same date.  The only link between Mashavu Turner and that incident, then, is an entry on his rap sheet for an arrest on that date.  The rap sheet contains an entry for a Berkeley Municipal Court misdemeanor battery charge one and a half years later.  However, a search of the Alameda County CRIMS database for the case number of the misdemeanor battery charge listed on Mr. Turner's rap sheet and relied upon by United States Probation shows a case against Markeaus Omari Turner, Mr. Turner's brother, with a different PFN number than Mr. Turner.  On November 24, 1997, the case against Mr. Turner's brother was dismissed.  There is a line that reads: "Dispo: Dismissed/FOJ/Plea to Another Charge."  From this rap sheet entry, United States Probation concludes that charges against Mashavu Turner (as opposed to his brother, who was named in the court records) with respect to the April 2006 incident were dismissed because Mr. Turner pled guilty to another charge.  This despite the fact that there is no record establishing that Mashavu Turner actually pled guilty to a charge related to the incident.

---

[3] United States Probation will not release copies of the police report to the defense pursuant to an office policy, but has informed defense counsel that Mr. Turner's brother, Markeaus, is named in the report.  Mashavu Turner is not named.  Markeaus Turner is now serving a lengthy prison sentence for a manslaughter conviction suffered after 1996.

Def's Sentencing Memo                 4

1   Even if it were true that Mashavu Turner somehow succeeded in using his brother's name
2   and PFN number in that case, the computer shorthand notation: "Dismissed/FOJ/Plea to
3   Another Charge" does not establish that Mr. Turner pled guilty to another charge. These
4   terms seem to be listed in the alternative. "FOJ" stands for "Furtherance of Justice."
5   Nowhere in the probation report or in any rap sheet available to the defense is there any
6   record showing that Mashavu Turner pled guilty to any charge related to this incident and, if
7   he had, what that charge was. Had Mr. Turner been convicted of something, it would appear
8   on his rap sheet.

9   Second, the probation report reflects a misunderstanding of the defense's informal
10  objections to the draft probation report. At paragraph 39, the probation report reads: "In the
11  response letter to the draft report, the defendant admitted his conduct in the second assault
12  and admitted that he pled to another charge. The second incident occurred just minutes after
13  the assault on Ms. Lee, so it is unlikely the defendant was involved in the second incident
14  and not the first." In his informal objections to the draft report, Mr. Turner *did not* admit
15  conduct in the second assault or admit that he pled to another charge. Quite the contrary.
16  The relevant portion of defendant's informal objections read as follows:

> On April 6, 1996, Mr. Turner and his friend were riding their bicycles, lost
> control, and unintentionally ran into a group of people. An argument ensued, but
> Mr. Turner vehemently denies the allegations about striking or grabbing anyone.
> This was not a situation where some charges were dismissed as part of a plea
> bargain in which Mr. Turner pled guilty to other charges. The charges were
> completely dismissed. At a minimum, Mr. Turner asks that the allegations be
> framed as *allegations*, not fact.

21  Third, putting aside the above concerns, what is most clear is that the allegations did
22  not result in a conviction for Mr. Turner. Any charges - whether they were against Mr.
23  Turner or his brother - were dismissed. Despite this fact, the report is written as if Mr.
24  Turner did, indeed, assault these individuals. Information about allegations that were not
25  pursued by law enforcement and did not result in a criminal conviction should not be
26  included in the probation report as if they were facts. Mr. Turner vehemently denies these

Def's Sentencing Memo                    5

allegations. The claims described in these paragraphs are serious, and if they had merit it is highly unlikely that charges would have simply been dismissed. Mr. Turner asks that paragraphs 36 through 39 be stricken from the report.

The defense raises this issue because this Presentence Investigation Report will follow Mr. Turner for the next ten years while he is in prison as well as during his term of supervised release. The Bureau of Prisons uses the Presentence Investigation Report both during the classification process and in future decisions about any number of issues critical to Mr. Turner's conditions while incarcerated, including the programs he may be eligible for. These unsupported allegations of violent conduct could be relied upon by BOP officials in key decisions about Mr. Turner's conditions of confinement for years to come. For example, in determining a security level for Mr. Turner, the BOP will assess what it refers to as "public safety factors." One such factor is labeled "sex offender". That factor applies to an inmate "whose behavior in the current term of confinement or prior history includes" nonconsensual, aggressive, abusive, or deviant sexual contact. The BOP's classification manual indicates:

> A conviction is not required for application of this [public safety factor] if the [PSR], or other official documentation, clearly indicates [the offensive conduct] occurred in the current term of confinement or prior criminal history. . . . [I]n the case where an inmate was charged with an offense that included one of the following elements, but as a result of a plea bargain was not convicted, application of this [public safety factor] should be entered.

Thus, one possible consequence of leaving these unproven allegations in the report is that the BOP could choose to assign Mr. Turner to a higher security level than he would otherwise be assigned.[4] In other words, it is possible that the BOP will assume that Mr. Turner committed serious assaults on a number of victims based upon the wording of this report. This despite the fact that questions remain about whether the charged individual was

---

[4] Paragraph 36 of the PSR includes the following claim: "...Turner grabbed her vaginal area."

Def's Sentencing Memo                6

actually Mr. Turner, the fact that any charges were dismissed, and despite the fact that Mr. Turner has no meaningful opportunity to challenge the allegations in this venue. Paragraphs 36 through 39 must be stricken.

In addition, for the same reasons paragraph 40, which describes a police contact relating to Mr. Turner and his girlfriend at the time, Aliyah Heinz-Giardello, should be stricken. No charges were filed stemming from that police contact. Finally, the last sentence of paragraph 59, which asserts that "in 1996, 2003, and 2006, the defendant was involved in domestic violence or violent incidences" should be stricken. This assertion is based upon police contacts that did not result in criminal convictions. Mr. Turner denies engaging in inappropriate violent behavior.

## IV.  Conclusion

Mr. Turner asks that the Court impose the stipulated sentence of ten years in prison. Mr. Turner asks that the Court grant his objections to the Presentence Investigation Report and order that paragraphs 36 through 40 and the last sentence of paragraph 59 be stricken. He asks that the Court recommend that he be housed at a facility as close as possible to this area so that he can receive visits from his wife and children. Finally, the Presentence Investigation Report describes a "long history of polysubstance abuse" by Mr. Turner. Mr. Turner would like to seek treatment for his use of narcotics. He asks that the Court recommend that he participate in the 900-hour RDAP drug treatment program. Mr. Turner thanks the Court for considering this memorandum.

Dated: August 27, 2008                    Respectfully submitted,

BARRY J. PORTMAN
Federal Public Defender

  /s/ Ned Smock  
Ned Smock
Assistant Federal Public Defender
Attorney for Defendant
MASHAVU TURNER